LEORA SIMON, Appellant, *v.* BERNARD V. SIMON, Respondent.

First Department, December 13, 1948.

*Irwin Isaacs* for appellant.

*William Seligson* of counsel (*Leo E. Falkin* with him on the brief), for respondent.

SHIENTAG, J. Plaintiff brought this action in July, 1947, in replevin to recover a bracelet and earrings claimed to have been delivered to the defendant for safekeeping in the summer of 1946. The complaint further alleged that in November, 1946, defendant evicted plaintiff from their home and took from her a stamp collection and some fur skins and handbags, which he refused to return though demanded. In his answer the defendant denied that the plaintiff was owner of the property, and pleaded, first, the general release executed and delivered by the plaintiff to the defendant on February 7, 1947; and, second, that the claims were barred because of a Nevada divorce decree which incorporated a property settlement and the release. In her reply the plaintiff pleaded that the general release, admittedly executed, did not cover the subject matter of this action.

In the bill of particulars plaintiff stated that there was a demand for the jewelry in November, 1946; and as for the other items it was stated in the bill of particulars that the defendant took them in November, 1946, and refused to return them at that same time on plaintiff's demand.

Plaintiff and defendant were divorced on February 7, 1947, in Nevada. Defendant appeared in that action and the parties entered into a property settlement under which $25,000, repre-

senting the plaintiff's interest in a copartnership business with her husband, was paid in full settlement of any claims for temporary and permanent alimony and counsel fees, and by reason of the marriage relation of the parties, " and all claims or demands of any description whatsoever which she may now have or hereafter may have against the husband ". The agreement further required the wife to execute a general release to the defendant, which she did on February 7, 1947. Under this general release, plaintiff gave up " all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extends, executions, claims and demands whatsoever, in law   *   *   *   or in equity   *   *   * ".

In this replevin action the trial court took the view that this release was absolute and included the claims for the return of jewelry, furs, handbags and stamps. Accordingly he directed a verdict in favor of the defendant.

Whether a release is to be treated as including all possible claims depends upon the purpose for which the release is given. (*Mitchell* v. *Mitchell,* 170 App. Div. 452; *Haskell* v. *Miller,* 221 App. Div. 48; *Nau* v. *Vulcan Rail & Construction Co.,* 286 N. Y. 188.) In this case the desire was to make a property settlement and dispose of all alimony claims and the claim of the plaintiff's copartnership interest. There was nothing, so far as is shown, before the Nevada court, to indicate that there was any dispute between the parties as to the title of the articles which are the subject of the present controversy. Therefore, while the release was general in form, we hold that, in the absence of a showing that the title to these articles was actually in question at the time the release was given, it cannot be held as a matter of law, that any claims based on such title were barred. (*Farnham* v. *Farnham,* 204 App. Div. 573.)

An examination of the testimony shows that neither party considered that title to the articles was in question at the time the divorce decree was granted and the property settlement and general release executed. The plaintiff's theory, according to her testimony, was that she owned and always had owned all the articles. She testified that the jewelry, furs and bags, and stamp collection were all purchased by her husband and given to her as gifts during the marriage. She said that in the summer of 1946, she had given the jewelry to her husband to be put in safe keeping because she had no use for them in the country. She testified that in November, 1946, she asked for

the articles but that her husband told her that when she returned from Reno, having procured a divorce which was contemplated, he would give her everything that belonged to her. She said that at that time the jewelry, the furs and the stamps were specifically mentioned. She further testified that on her return from Reno in February, 1947, she asked for the articles but that the defendant refused to give them to her, saying that he had nothing that belonged to her and she had gotten everything she was going to get out of him.

If this testimony is accepted, it means that when the plaintiff went to Reno she had bailed the articles in suit with the defendant, who had promised to return them to her after she had procured her divorce. Under this testimony, it will be noticed that the title to the articles was not in question and there was no existing dispute which required settlement or discharge by a general release. Under the plaintiff's testimony, the matter could not have been within the contemplation of the release that was given.

Defendant's version of the transactions is that in July or August, 1946, while the parties were at their home in Ossining, a conversation took place concerning the payment of numerous debts which the plaintiff had incurred and which the defendant had been called upon to pay. There was something of a quarrel. Defendant testified that the plaintiff said she would make good the amount due and threw the bracelet and earings on the bed, with the intention of returning them to him in partial settlement of those obligations. The defendant said he accepted the return of the jewelry in part payment of the expense the plaintiff was causing him. Defendant denied having the handbags or furs, saying that the plaintiff had packed everything of that nature and taken it with her to Reno. As to the stamp collection, he denied that he had ever given it to the defendant for any purpose except her use as a form of therapy in the attempt to cure her illness. He claimed, in effect, that he had always had actual title to the stamps, and still retained them as his own.

Taking this testimony as true, it is apparent that on the defendant's theory, at the time the release was given, he had full title to the jewelry and the stamps, and had not kept the furs and handbags and furthermore that no question was ever raised about these matters. From this point of view it seems obvious that he could not have intended that the release should cover any claims to these articles, because he, in effect, denied that any claims had ever been made.

Under the facts and circumstances herein disclosed, the release pleaded would be a bar only to matters about which there had been some disputed claim. The record fails to show the existence of any dispute which was knowingly settled by the release. The demand for the return of these articles, and the subsequent refusal on which this action was based, were made after the execution of the release. If there were any inconsistency on this point between the pleadings and proof, the plaintiff's application to amend the pleadings to conform to the proof should have been granted.

In view of the testimony of both parties, a question of fact was raised as to the title of these articles the solution of which depended upon which line of testimony was entitled to belief, and those issues should have been left to the jury.

Since there must be a new trial, we need not consider the question of the alleged newly discovered evidence.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

GLENNON, J. P., DORE, COHN and CALLAHAN, JJ., concur.

Judgment and order unanimously reversed, and a new trial ordered, with costs to the appellant to abide the event.