Morris E. Spector, J.
This is an action at law by teachers of swimming in defendant’s employ to recover a balance of salary *442 allegedly due them for their work between September 1, 1950, and June 30, 1954. Plaintiffs concede that so much of their claims as accrued before March 5, 1951, is barred by the applicable Statute of Limitations.
Plaintiffs claim that upon their reinstatement from a preferred list as teachers of swimming on September 1, 1950, the Board of Education should have fixed their salary at $4,750 annually in the 15th salary step in the salary schedule for teachers, and that the board should have advanced them to the 16th and highest salary step in 1951; and that since the board only placed them in the 12th salary step upon their reinstatement on September 1, 1950, they have been paid less than the salary due them between September 1, 1950, and June 30, 1954, when they actually reached the 16th salary step.
The plaintiffs were appointed as teachers of swimming in 1936, and they served as such until August 31, 1941.
A dispute as to the proper salary schedule applicable to their position resulted in a decision by the Commissioner of Education on July 10, 1941, that the legal salary schedule for teachers of swimming was $1,900 to $3,250 annually, and not the $1,400 to $2,000 annually which the board had fixed in 1936 (Matter of Giebel, 64 N. Y. St. Dept. Rep. 103).
Thereupon, on July 23, 1941, the board adopted a resolution which stated that for lack of budgetary provision to pay the greater salaries it was abolishing all positions of teachers of swimming in excess of 50, effective August 31,1941. The names of the suspended teachers, including the plaintiffs, were placed upon a preferred eligible list for reinstatement to future vacant positions, in accordance with section 2585 of the Education Law.
On November 12, 1941, the suspended teachers and the board made a written agreement whereby they settled their differences. The board adopted a resolution appointing the suspended teachers, including the plaintiffs, as instructors in showers, at a salary of $1,400 to $2,000 annually, effective November 13, 1941, with a provision that each such appointee “ shall also retain his original anniversary date effective in his former position.”
The agreement provided: ‘ ‘ those teachers appointed to shower baths shall retain their positions on the preferred eligible list for Swimming Teachers from which list the Board of Education shall make appointments of Swimming Teachers as vacancies or openings occur. Such appointments as Swimming Teachers shall be made at the appropriate salary level under Schedule A-2, also known as Schedule XIa, in accordance with the prior years of accredited service as prescribed by law in the same manner as was done with the first fifty (50) teachers of swimming who *443 were originally retained in the service.” (Emphasis supplied.)
The clear purpose and effect of this provision of the agreement was to fix the future salary of such suspended swimming teachers, at the time of their future reinstatement to such position from the preferred list, at the same salary then received by the first 50 teachers of swimming originally retained in the service.
At the time of plaintiffs’ reinstatement from the preferred list on September 1,1950, the first 50 teachers of swimming who were originally retained in the service were being paid $4,525 annually in the 12th salary step in the teachers’ salary schedule.
Upon reinstating the plaintiffs on September 1, 1950, the board fixed their salary at $4,525 annually in the 12th salary step in the teachers’ salary schedule. By this action the board undoubtedly intended to and considered that it was carrying out the provision of the 1941 agreement fixing the salary of the suspended teachers upon reinstatement 1 ‘ in the same manner as was done with the first fifty (50) teachers of swimming who were originally retained in the service.”
However, such first 50 teachers of swimming claimed that they were entitled to a higher salary step, and on October 2, 1952, the board settled their claim by giving them revised placement, as of April 8, 1948, on the 11th salary step, and as of July 1, 1948, on the 12th salary step, with advancement of one salary step on July 1 of each year thereafter until they reached the 16th salary step on July 1, 1952.
Under the 1941 agreement between the suspended teachers and the board, it was bound to revise the salary level of the reinstated teachers to give them the same salary level which it gave the first 50 swimming teachers by the revision of October 2, 1952. However, this agreement restricted their rights to such salary and they have no contractual rights to any larger salary.
There was ample consideration for the board’s agreement in 1941 that upon reinstatement it will pay the plaintiffs the same salary then being paid to the first 50 swimming teachers. The plaintiffs waived their claims to back pay between 1936 and 1941 for the difference between the $1,400 to $2,000 salary paid them, and the $1,900 to $3,250 salary due them under the decision of the Commissioner of Education in the Giebel case (64 N. Y. St. Dept. Rep. 103, supra).
As a result of the 1941 agreement between the suspended teachers and the board, such teachers discontinued a second appeal to the Commissioner of Education, wherein they sought to annul the abolition of their positions, and reinstatement thereto (Matter of Giebel, 64 N. Y. St. Dept. Rep. 217).
*444 There can be no question as to the validity of the 1941 agreement between the suspended teachers and the board. The board’s resolution states that the agreement was approved by the Commissioner of Education, and that “ The Corporation Counsel has advised the Law Committee that the agreement and these resolutions may be legally entered into by the Board of Education.”
The general releases on which the board relies only released claims for additional compensation prior to September 1, 1950.
The board reinstated the plaintiffs at the same $4,525 salary in the 12th salary step which the first 50 teachers of swimming were then receiving. The plaintiffs had no claims for additional compensation on September 1, 1950, since they were then receiving the same salary as the first 50 swimming teachers.
However, on October 2, 1952' when the board revised the salary step of the first 50 swimming teachers, retroactively as of April 8, 1948, the plaintiffs became entitled to a similar revision under the 1941 agreement.
Lucio v. Curran (2 N Y 2d 157) cited by the board, differs from this case because there were prior negotiations in that case during which the defendant rejected a proffered limited release, and insisted on a general release. Here, in contrast, the general release is limited by the words “ more particularly, any and all claims for additional compensation prior to September 1,1950.” Consequently, the “ general words of release are deemed to be limited by a recital of a particular claim.” (Haskell v. Miller, 221 App. Div. 48, 49, affd. 246 N. Y. 618.)
In determining the effect of a release, the basic inquiry is the intention of the parties and the purpose for which the release was given (Simon v. Simon, 274 App. Div. 447, 449-450) and it must be construed in connection with the agreement, which was entered into at the same time (Television Credit Corp. v. International Tel. Corp., 279 App. Div. 561). It is thus settled that broad, general language in a release must yield to the intention of the parties (Matter of Delaware Co. Elec. Corp. v. City of New York, 304 N. Y. 196).
When the releases were given neither party knew nor contemplated that the salary step of the first 50 swimming teachers would be increased retroactively. There is no indication whatever that the releases were intended to apply to plaintiffs’ present claims, which accrued after the releases were given.
Plaintiffs’ motion to amend the pleadings to conform to the proof that the parties agreed to pay the plaintiffs upon reinstatement the same salary which the first 50 teachers were then *445 receiving is granted. All other motions on which decision was reserved during the trial are denied.
Plaintiffs (except Sharp, whose action was discontinued by stipulation, with prejudice, but without costs, and McCann, whose action is dismissed, without prejudice, on consent of his counsel) are entitled to judgment against defendant for the difference between the salary paid them, and the salary paid the first 50 swimming teachers between March 5, 1951 and June 30, 1954, with appropriate interest.
The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment.