**Annenberg Research Institute v. Whiteman**

*Judith Fellheimer,* for plaintiff.
*Ira Lefton* and *Bernard Heinzen,* for defendant.

GAFNI, *J.,* March 23, 1993 —

## OPINION

Annenberg Research Institute, brought this action in replevin seeking to recover from Maxwell Whiteman, certain documents it claims he obtained unlawfully during his employment by its predecessor institution. Whiteman has moved for summary judgment. This court originally

denied Whiteman's motion. He then moved for reconsideration, arguing that this court's order was entered before it had the opportunity to review his reply memorandum. For the reasons stated below, this court will grant Whiteman's motion for reconsideration, and will now also grant his motion for summary judgment.

## 1. FACTUAL BACKGROUND

ARI is a non-profit educational institution, and a successor to Dropsie College for Hebrew and Cognate Learning. Dropsie employed Whiteman as a librarian from 1959 to 1964. ARI now claims that, during his employment, Whiteman acquired possession of certain letters and manuscripts belonging to Dropsie, without Dropsie's consent.

In his motion for summary judgment, Whiteman argues that Annenberg is precluded from bringing this action due to a release executed by Dropsie College in favor of Whiteman on June 20, 1965. That release states:

### "RELEASE

"Know all men by these presents that the Dropsie College for Hebrew and Cognate Learning, a non-profit corporation, does hereby remise, release, and forever discharge Maxwell Whiteman, also known as Max Whiteman, his heirs, executors and administrators, of and from all, and all manner of, actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity, especially by reason of, in connection with or growing out of his employment as librarian, which against the said Maxwell Whiteman, it ever had, now has, or which its successors or assigns, or any of them, hereafter

can, shall or may have, for, or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the date of these presents." Release, attached as Exhibit A to Whiteman's request for admissions, which is attached as Exhibit 3 to his motion for summary judgment. The release is signed by Dr. Abraham A. Neuman, who was then president of Dropsie. ARI does not dispute the existence of this release, but argues that issues of fact and law exist as to its effect and interpretation.

As evidence that an action for recovery of its property was within Dropsie's contemplation at the time of the settlement, Whiteman points to an internal memorandum authored by Dr. Neuman, the authenticity of which has not been disputed. This memorandum is dated April 15, 1965, before the release was signed. In it, Dr. Neuman relates the history of Whiteman's relationship with Dropsie. He states, in relevant part:

"I dismissed [Whiteman] on grounds other than theft. I had no suspicion at that time of his dishonesty. Soon after his disengagement from the college however, reports of a disturbing character are continuing to come into me to this day. Yesterday the janitor told me of many instances when he was directed by Whiteman to take out packages of library books.... The most damaging evidence of outright thievery ... came to me directly when I was asked in behalf of the donor of a collection of books (several hundred volumes of an estimated value of $1,000) for an acknowledgement of the donation.... No trace of this gift was found in the usual library record book and none of the valuable books named by the donor could be found after a diligent search by the staff.... Added to this case, the disappearance of valuable manuscripts under suspi-

cious circumstances caused me to withhold his claimed salary...." Memorandum attached as Exhibit D to Whiteman's request for admissions, attached as Exhibit 3 to his motion for summary judgment.

## 2. DISCUSSION

Where the terms of a release and the facts and circumstances existing at the time of its execution indicate that the parties intended a general settlement of accounts, the release will be given effect according to its terms. *Brill's Estate*, 337 Pa. 525, 528, 12 A.2d 50 (1940); *Cady v. Mitchell*, 208 Pa.Super. 16, 220 A.2d 373 (1966). The release executed by Dropsie College through its president is, by its language, a general settlement of accounts. As recorded above, it releases Whiteman from "all and all manner of" actions, "especially by reason of, in connection with, or growing out of his employment" by Dropsie (but not exclusively in that connection), which the college "ever had, now has,... shall or may have, for, or by reason of any cause, matter or thing whatsoever." The release should, therefore, be enforced according to its terms.

A release normally covers only such matters as can fairly be said to have been within the contemplation of the parties when the release was given. *In re Bodnar's Estate*, 472 Pa. 383, 387, 372 A.2d 746, 748 (1977); *Wenger v. Ziegler*, 424 Pa. 268, 271, 226 A.2d 653, 654 (1967). ARI argues that it is inconceivable that Dr. Neuman executed the release knowing of the thefts, and that, on the date of the release, he had no more than "unsubstantiated and inchoate suspicions" of Whiteman's alleged wrongdoing. Dr. Neuman's memorandum of April 15,

1965, however, indicates that when he signed the release he already believed that Whiteman possessed property which belonged to Dropsie.

Because it was within Dr. Neuman's contemplation at the time of signing that Whiteman might possess property belonging to Dropsie, the release covers the subject matter of this action. Dr. Neuman could have preserved Dropsie's right to act upon his suspicions by refusing to release Whiteman, or by specifically reserving the right to seek the return of any such property. Instead, he released Whiteman from "any claims and demands whatsoever in law or equity," on behalf of Dropsie and "its successors or assigns." Whether intentionally, through oversight, or through ignorance of the significance of his acts, Dr. Neuman, on behalf of Dropsie, waived any right ARI might have had to maintain this action. ARI may not now disclaim its predecessor's knowing and voluntary release of Whiteman.

ARI maintains that the courts of this Commonwealth have not yet considered whether a general release can transfer title to property. It argues that title to the disputed documents remains with it, despite Dropsie's release of Whiteman. ARI has not, however, convinced the court that an action for replevin of articles to which the title is disputed is excepted from language releasing a party from "all manner of" action, "by reason of any cause, matter or thing whatsoever," particularly where it is clear that the dispute existed at the time of the release.

In *Simon v. Simon,* 84 N.Y.S.2d 307, 274 A.D. 447 (App. Div. 1948), cited by ARI in connection with this argument, the court stated that no claims based on a dispute of title were barred by a general release "in the absence of a showing that the title to those articles was actually in question at the time the release was given." 84 N.Y.S.2d at 309. Here, by contrast, the April 15, 1965, memorandum

indicates that questions existed as to the title to items in Whiteman's possession at the time the release was given, even though the exact articles may not yet have been identified.

Finally, ARI argues that the release does not apply to the letters now in dispute, because its cause of action arose after the execution of the release. In its complaint, however, ARI alleges that the thefts occurred during the period of Whiteman's employment. Complaint at 6. Any cause of action against Whiteman for theft arose at that time. Although ARI may, as it argues, have become aware only in 1992 that Whiteman had these particular letters, its predecessor institution suspected Whiteman of theft in 1965. It was obligated to use all reasonable diligence to become informed of all facts upon which its potential action could be based, if it wished to take legal action in the future. See *Morgan v. Johns-Manville Corp.*, 354 Pa. Super. 58, 511 A.2d 184 (1986), *allocatur denied* 514 Pa. 636, 522 A.2d 1105 (1987).

As discussed above, the release could not have been effective as to matters that were not in the contemplation of the releasing party. It could not, therefore, release Whiteman from liability for a theft of which he was not suspected on June 20, 1965. Here, however, it is undisputed that Dr. Neuman, acting for Dropsie, suspected Whiteman of the theft of Dropsie documents when he signed the release. Although he may not have been able to name the precise documents he believed Whiteman to possess, Dr. Neuman had knowledge sufficient to allow him to make an informed decision as to whether to sign a general release, and Dropsie's successor is now bound by his actions. Accordingly, this court will grant Whiteman's motion for summary judgment.

## ORDER

And now, March 23, 1992, upon consideration of the motion of defendant, Maxwell Whiteman, for summary judgment, it is hereby ordered and decreed that said motion is granted and that the plaintiff's claims are dismissed.