**ATLANTIC STATES LEGAL FOUNDATION, INC. and Rainbow Alliance For A Clean Environment, Plaintiffs,**

v.

**KARG BROS., INC., Defendant.**

No. 90–CV–900.

United States District Court, N.D. New York

Dec. 20, 1993.

---

**37.** Ging Aff., Doc. 42 at 2.

Peter Henner, Office of Peter Henner, Albany, NY, for plaintiffs.

Philip H. Dixon, Whiteman, Osterman Law Firm, Albany, NY, for defendant.

### *ORDER*

McAVOY, Chief Judge.

### MEMORANDUM–DECISION & ORDER

## I.  BACKGROUND

The defendant, Karg Bros., operates a tannery in Johnstown, New York. The facility discharges wastewater to the Gloversville Johnstown Joint Wastewater Treatment Facility, a publicly owned water treatment plant. These discharges are regulated by both a wastewater discharge permit issued by the sewage plant, and by federal categorical pretreatment standards set forth at 40 CFR 425.15.

The parties to this action came before the court on May 22, 1992 both making a motion for summary judgment in their favor. The court ruled that the plaintiffs' motion for summary judgment be denied in its entirety and that the defendant's motion for summary judgment be granted in part and denied in part in an order entered on July 19, 1993. The court granted partial summary judgment in favor of the defendant based on the plaintiffs' lack of standing to sue for the alleged exceedences of chromium, hexavalent chromium, lead, phenolics, nickel, copper, zinc, and sulfide between January 1, 1989 and December 31, 1991. Summary judgment was also granted in favor of the defendant in regard to all other alleged exceedences of lead, copper, zinc, and hexavalent chromium. Because the court found that material questions of fact still existed surrounding the remaining alleged exceedences, summary judgment was denied in all other respects. The exceedences that remained in question included all pH exceedences mentioned in the complaint and Notice of Intent to Sue and those alleged exceedences of phenolics, chromium, and sulfide mentioned in the complaint and the Notice of Intent to Sue, which did not occur between January 1, 1989 and December 31, 1991.

The plaintiffs have since moved for reconsideration of the court's July 19, 1993 order pursuant to Fed.R.Civ.P. 59(e) and Northern District of New York Local Rule 10(m). The plaintiffs cite this court's favorable ruling on reconsideration motions made in the similar cases of *Atlantic States Legal Foundation v. Colonial Tanning Corp.; Atlantic States Legal Foundation v. Twin City Leather Corp.,* 827 F.Supp. 903, (N.D.N.Y.1993) as grounds to do the same in this case. The plaintiffs assert that, contrary to the court's holding, they do have standing to maintain this suit, as was found upon reconsideration of the other cases. Furthermore, the plaintiffs seek summary judgment in their favor regarding the 41 alleged violations that were the subject of their original motion for partial summary judgment. They also assert that, contrary to the court's July 19, 1993 order, their claims with respect to the defendant's violations of its wastewater discharge permit for copper and lead are not moot. The defendant has opposed reconsideration.

## II.  DISCUSSION

A court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice. *Larsen v. Ortega,* 816 F.Supp. 97, 114 (D.Conn.1992). It is in light of this standard that the court undertakes reconsideration of its July 19, 1993 order in this case.

### A.  The Court's Prior Decision

In considering the standing issue, the court recognized that at a constitutional minimum, to establish standing a plaintiff must (a) claim to have suffered an injury in fact,

(b) which is fairly traceable to the defendants' allegedly illegal conduct, and (c) is likely to be redressed by a favorable outcome. *Transcript of Oral Decision 5/22/92* at 3 [hereinafter *Transcript*]. After considering the allegations in the complaint and the evidence presented, relying on *Friends of the Earth v. Consolidated Rail Corporation*, 768 F.2d 57 (2d Cir.1985), the court found that the plaintiffs satisfied the "injury in fact" element. *Transcript* at 4. However, as to the "fairly traceable" element the court found that the plaintiffs had failed.

As to that second element, the court explained that "the question is not whether the defendants' exceedences caused the facility to violate its effluent standards, but rather whether the defendants' pollution reached the Cayudetta Creek in excess of the legal limits." *Id.* at 7. Continuing with its decision, the court stated that "whether the facility exceeded its limitations is a material fact which is dispositive of the issue of whether the pollutants reached the creek in unlawful amounts." *Id.* Because defendants had come forward with uncontradicted evidence that the facility had not exceeded its limitations as to sulfides and chromium, the court found that the plaintiffs' injury was not fairly traceable to the defendants' alleged violations of those parameters. As to the remaining violations, the court found that summary judgment was not proper because there were questions of fact remaining.

Now, after reconsidering its prior analysis in the context of the relevant statutory scheme, and with a better understanding of the interrelationship between the limitations imposed on indirect dischargers and publicly owned treatment works, the court believes that its earlier ruling was in error. For the reasons expressed herein, the court now finds that plaintiffs have met the second element of the standing analysis.

### B. Reconsideration of Standing

In 1972 Congress established a comprehensive statutory and regulatory scheme,

known as the Clean Water Act, in order "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). As part of this scheme, limitations were imposed on the type and amount of certain pollutants which may be discharged into the Nation's navigable waters. However, in 1977 Congress recognized that the "Act's regulatory mechanism for the control of toxins had failed. . . ." *Natural Resources Defense Council v. U.S. Environmental Protection Agency*, 790 F.2d 289, 292 (3d Cir.1986). Consequently, the Act was amended that year to address the regulatory deficiencies.

The 1977 Amendments required that sources discharging waste into publicly owned treatment works (POTW) pretreat their waste. Section 307(b)(1) of the Act, 33 U.S.C. § 1317(b)(1), directs the Administrator of the EPA to establish categorical pretreatment standards for the introduction of pollutants into POTWs. This illustrates Congressional recognition of the fact "that the pollutants which some indirect dischargers release into POTWs could interfere with the operation of the POTWs, or could pass through the POTWs without adequate treatment." *National Association of Metal Finishers v. Environmental Protection Agency*, 719 F.2d 624, 633 (3d Cir.1983), *rev'd on other grounds sub nom., Chemical Mfrs. Ass'n. v. N.R.D.C., Inc.*, 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985). Implicit in the establishment of categorical pretreatment standards for indirect dischargers was a recognition of the fact that both the indirect source and the POTW are independent polluters.[1] With the advent of the 1977 Amendments each polluter must separately comply with its own pollution limitations.

As explained by the court in *International Union, U.A.W.*, when formulating these categorical pretreatment standards,

"[the] EPA compared the percentage of each regulated pollutant that a POTW can

---

1. *See generally International Union, U.A.W., et al. v. Amerace Corp., Inc.*, 740 F.Supp. 1072, 1082 (D.N.J.1990) (if violations of categorical pretreatment standards were not actionable without proof of POTW's violation, the pretreatment standards would be superfluous); *and New York Public Interest Research Group v. Limco Mfg. Corp.*, 697 F.Supp. 608, 611 (E.D.N.Y.1987) (plaintiffs in citizen suit have standing to sue indirect discharger where it is alleged that the discharge affects the environmental interest in the waterway).

remove from the wastestream with the percentage that a direct discharger using the best available technology can remove. [46 F.R.] at 9407, 9415 [ (1981) ]. Where POTWs were found to be less efficient than direct dischargers at removing a regulated pollutant, EPA calculated the maximum concentration of that pollutant (i.e. the categorical standard) that can be present in an indirect discharger's wastewater without preventing attainment of the mandated parity in removals." 740 F.Supp. at 1081.

Consequently, it is clear that the categorical pretreatment standards are not merely isolated limitations on an indirect source's discharge. These standards are based upon the POTW's efficiency of removing certain pollutants, and are therefore an integral part of the overall regulatory scheme designed to reduce water pollution. If either polluter, the indirect discharger or the POTW, exceeds its effluent standards, this integrated regulatory scheme will break down. Accordingly, even assuming that a POTW maintains its efficiency at removing a regulated pollutant and does not exceed its own effluent limitations, an indirect source's violation of the pretreatment standards necessarily contributes to water pollution in an amount greater than the law permits.

Therefore, the statutory scheme dictates that an indirect source must be treated as an independent polluter. Based upon the relationship between the pretreatment standards and the efficiency of the POTW, it is clear that the protection of the environment is dependent upon the compliance of both the POTW and the indirect discharger. Therefore, the POTW's compliance with its permit limitations neither absolves an indirect source's violation of categorical pretreatment standards, nor prevents the introduction of such pollutants into the Nation's waterways. It simply means that the POTW, as an independent polluter, did not contribute to water pollution any more than it is allowed to.

██ Based upon a clearer understanding of this integrated regulatory scheme, the court now finds that it was error to rule that plaintiffs' injuries are not fairly traceable to the defendant's allegedly unlawful conduct.

The granting of a motion for reconsideration is clearly within the discretion of the court whose order is the subject of the motion. *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983). Reconsideration is warranted where, as here, a party demonstrates that the earlier ruling was premised upon a misunderstanding of a relevant regulatory scheme.

██ Therefore, the court now finds that the relevant question is not, as previously stated, whether the defendant's pollutants reached the Cayudetta Creek in "unlawful amounts". Instead, if (1) defendant's discharges exceeded the effluent standards, (2) the pollutants reached the waterway, and (3) those pollutants are of the type which cause the "injury" sustained by the plaintiffs, then the "injury in fact" is fairly traceable to the defendants' violation. *See Public Interest Research Group of New Jersey v. Powell Duffryn Terminals,* 913 F.2d 64, 72 (3d Cir. 1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991); *Natural Resources Defense Council, Inc. v. Watkins,* 954 F.2d 974 (4th Cir.1992). Based upon this formulation, plaintiffs' satisfy the fairly traceable element.

Finally, defendants did not challenge the third element of the standing analysis—that is, whether plaintiffs' injuries are redressable by the relief sought in the complaint. Consequently, the court has not previously ruled that plaintiffs have satisfied this element. Nevertheless, it is clear to the court that the relief sought will redress the injuries alleged in the complaint, and that plaintiffs therefore have standing to bring the instant action.

The court does not agree with the defendant's assertion that the Supreme Court's decision in *Lujan v. Defenders of Wildlife,* — U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), which was not decided until after the similar reconsideration orders in the *Colonial* and *Twin City* were issued, bars the plaintiffs' standing in this case. The *Lujan* case involved the lack of federal government regulation of third parties, and thus the plaintiffs' standing was premised on the "unfettered choices made by independent actors not before the courts and whose exercise of

broad and legitimate discretion the courts cannot presume either to control or to predict." *Lujan* —— U.S. at ——, 112 S.Ct. at 2137 *quoting ASARCO, Inc. v. Kadish,* 490 U.S. 605, 615, 109 S.Ct. 2037, 2044, 104 L.Ed.2d 696 (1989). In this case, however, no third party is involved who falls outside the regulation of the government. The case at hand is based on Karg Bros.' alleged failure to follow established government regulations. Karg Bros. must adhere to the requirements of the Clean Water Act, and thus it is not an independent actor with unfettered discretion that the court cannot oversee. Thus, the plaintiffs have standing to sue in this case.

### C. Summary Judgment

The plaintiffs seek summary judgment in their favor in regard to the 41 discharges for which no factual questions existed on the initial motion for partial summary judgment, and for which there are now no longer questions of fact with respect to the plaintiffs' standing. The defendant's original objection to partial summary judgment was based upon standing, mootness, and failure to name an indispensable party, the Joint Sewage Board. The defendant again raises the standing and mootness arguments against this motion for reconsideration and adds a new one: the claim that documentation has recently become available showing that all sampling data which forms the basis of the complaint is invalid. Based on this last argument, the defendant seeks summary judgment in its favor. As previously discussed, the plaintiffs do have standing in this action. Thus, the court now turns to the merits of the remaining two arguments.

#### 1. Accuracy of the Sampling Data

■ Due to its potential to make the other argument moot, the court addresses the issue of inaccurate sampling data first. It is the defendant's contention that in June 1993, pursuant to a Freedom of Information request, the JSB furnished Karg Bros.' attorney with information, for the first time, that a cross-connection between Karg Bros. sewers and the Johnstown City sewers would render inaccurate any samplings and flow measurements taken at the Karg Bros. monitoring facility. This information was provided in the form of a letter from Richard Hogan, the facility manager of the JSB, to the Mayor of Johnstown notifying him of the cross-connection and a memorandum written by Richard Hogan outlining the test procedure and results of the dye test conducted on June 10, 1991 which confirmed the cross-connection. The memorandum also noted that several representatives of Karg Bros.— William Romaine, Robert Van Arnam, and Roger Warner—were present during the dye testing and were aware of its results. In fact, the memorandum notes that Roger Warner and Robert Van Arnam "observed the influent to Karg's pretreatment system." (Def.Exh. A at 5).

Based on the fact that a cross-connection existed in the sewer system on June 10, 1991, the defendant now seeks summary judgment in its favor claiming that all the sampling results showing exceedences which form the basis of the plaintiffs' summary judgment motion are inaccurate. The defendant claims that this information is newly discovered evidence, and thus should be considered by the court in its review of its previous order in this case. Based on the standard for newly discovered evidence, however, the court finds that this evidence should not be allowed to affect its reconsideration decision.

■ Newly discovered evidence is that which is "truly newly discovered or . . . could not have been found by due diligence." *United States v. Potamkin Cadillac Corp.,* 697 F.2d 491, 493 (2d Cir.1983) *quoting Westerly Electronics Corp. v. Walter Kidde & Co.,* 367 F.2d 269, 270 (2d Cir.1966). It is clear from the information supplied by the defendant that although Karg Bros.' attorney may have only learned of the cross-connection in June 1993, at the very least the three Karg Bros. employees present during the dye test have been aware of the problem since June 10, 1991, or were at least on notice that the accuracy of wastewater sampling data was questionable due to the cross-connection. Mr. Romaine, the plant manager for Karg Bros., was present at the dye testing and submitted an affidavit in opposition to plaintiffs' original motion for partial summary judgment in February 1992. Nothing in that

affidavit addressed the issue of a sewer cross-connection. Thus, although the defendant was aware of this problem before this motion for reconsideration was filed, it chose not to address the cross-connection problem until now. Therefore, this information does not truly present newly discovered evidence, and it will not be weighed in the court's reconsideration decision. The defendant's motion for summary judgment is therefore denied. The plaintiffs' motion for summary judgment is granted.

### 2. Reconsideration of the Mootness of Wastewater Discharge Allegations of Copper and Lead

■ The plaintiffs also seek reconsideration of the portion of the court's July 19, 1993 order that dismissed sections of the complaint relating to copper and lead discharges. The court's previous decision held that the defendant's violations of its wastewater discharge permit for copper and lead are moot. Based on the defendant's evidence that all violations with respect to copper and lead had ceased by the time the complaint was filed, the court decided that the issue was moot because the Clean Water Act is designed to remedy present and future harms and not to sanction past violations. Thus, the court found that there was no longer a viable questions of law.

The plaintiffs now submit data showing that violations of the wastewater discharge permit involving copper and lead have occurred on a number of occasions during the period of June 1991 to July 1993. Accordingly, the plaintiffs seek reconsideration of the court's previous summary judgment ruling based on mootness. As noted above, only when evidence is truly newly discovered does it become proper grounds for a motion for reconsideration. *Potamkin Cadillac Corp., supra,* 697 F.2d at 493. In this instance, the alleged discharges now introduced took place since the time the motion for summary judgment was argued on May 22, 1992, and thus present newly discovered evidence that Karg Bros. may have violated its wastewater discharge permit for copper and lead.

Summary judgment is only appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.) *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The defendant concurs that a factual issue has been raised by this new evidence, but believes it will be able to demonstrate at trial that these violations cannot be traced to the actions of Karg Bros. The court also agrees that a triable question of fact has been raised. Based on this new information, the court finds that summary judgment regarding discharges of copper and lead is not appropriate and reverses that portion of its July 19, 1991 order granting summary judgment regarding the discharges of copper and lead.

### III. CONCLUSION

Having considered the arguments advanced on plaintiffs' motion for reconsideration in the above captioned action, the court finds that portions of its earlier decision were in error. Therefore, the court grants plaintiffs' motion for reconsideration and vacates those portions of the order entered on July 19, 1993 in *Atlantic States Legal Foundation v. Karg Bros.,* 90–CV–900 that are affected by this decision.

For the reasons expressed in part II(B) of this decision, the court finds that plaintiffs have standing to sue under 33 U.S.C. § 1365. For the reasons expressed in part II(C) of this decision, the court finds that summary judgment should be granted in favor of the plaintiffs regarding the 41 violations of the Clean Water Act addressed by the plaintiffs.

For the reasons expressed in part II(D) of this decision, the court finds that triable questions of fact in regard to discharges of copper and lead between July 1991 and June 1993 have been raised by the plaintiffs. Thus, the court's earlier holding that alleged violations of the defendant's wastewater discharge permit for copper and lead are moot is reversed.

**IT IS SO ORDERED.**