### ALBANY SAVINGS BANK, FSB, Plaintiff,

v.

### Jack HALPIN and Joanne Halpin, Defendants.

No. 94–CV–689.

United States District Court, N.D. New York.

March 11, 1996.

Felt, Hubbard, Bobrow & Hallak, Clinton, New York (E. Porter Felt, of counsel), for plaintiff.

Jack Halpin and Joanne Halpin, Redding, CA, pro se.

O'Connor, Cohn, Dillon & Barr, San Francisco, CA (Duncan Barr, of counsel), for defendants.

### MEMORANDUM–DECISION & ORDER

HURD, United States Magistrate Judge.

This matter is before the court pursuant to plaintiff's post trial motion for a new trial or to amend the judgment. Defendants submitted opposition papers. Oral arguments were not heard.

## INTRODUCTION

### I. Procedural History

This matter came to trial on November 27, 1995, and a jury was selected. Prior to opening of plaintiff's case, the defendants' trial attorney made a motion in limine seeking to preclude plaintiff's use of parol evidence. The plaintiff opposed this motion.

The plaintiff sought to introduce parol evidence of events prior to the mutual exchange of general releases on December 7, 1993, to prove that, despite broad and unambiguous language, its release was intended to be very limited. The court ruled that parol evidence prior to December 7, 1993 was inadmissible to establish the intent and scope of the general release executed by the plaintiff, which the defendants relied upon as a complete defense to plaintiff's claims. Evidence of admissions or acknowledgments by the defendants subsequent to the exchange was allowed to prove a limited nature to plaintiff's general release. Apparently plaintiff had no such evidence.

Defendants' trial attorney then moved to dismiss, asserting that plaintiff could not prove its case without such parol evidence because the general release executed by the plaintiff was, in fact, a complete defense. Plaintiff did not object to defendants' motion. The court therefore granted defendants' motion and ordered entry of judgment with prejudice against plaintiff.[1]

Plaintiff now moves the court for postjudgment relief on three bases: 1) the court erred in ruling parol evidence inadmissible; 2) the court erred in failing to consider equitable relief; and 3) the court erred in ordering judgment with prejudice. First the court will develop the pertinent facts, then discuss each propounded basis for relief in turn.

### II. Facts

Defendants Jack and Joanne Halpin ("the Halpins" or "defendants") have had a longstanding relationship with Champlain Valley Federal Savings & Loan Association and its successor in interest, plaintiff Albany Savings Bank FSB, ("the Bank" or "plaintiff"). The Halpins had seven or eight mortgages with the Bank, as well as other dealings. The Bank was represented by counsel in these dealings. Although the Halpins were not always represented by counsel, Mr. Halpin himself is an attorney. Furthermore, the Halpins were sophisticated in real estate dealings, having owned approximately 14 parcels of property in New York State, and approximately the same number of parcels in California, at different periods of time since 1960. The Halpins and the Bank had several disputes regarding some of the loans. The disputes which are in any way related to this action are discussed below.

The mortgage which started this dispute was for a property known as the Essex Marina or the marine base ("the marina"). The marina originally consisted of two boat sheds, a gas dock, what was known as the Cupola House, an automobile gasoline station, a wood shop, a machine shop, and a store. In June 1988, the Halpins obtained a loan from the bank in the amount of $234,000, secured by a mortgage on the marina.

One month later they obtained a home equity loan from the bank secured by a mortgage on an unrelated property known as the Bailey House. The purpose of this loan, which was known by the Bank, was to build new docks on an underwater easement the Halpins had obtained from the State. These new docks were built at a cost of approximately $100,000. Because the purpose of the loan was to build new docks, the Halpins attempted to increase the marina loan to finance the project, but the Bank required the other property as security. This loan, with an unpaid balance of $69,142.13 as of December 1, 1993, is one which the Bank argues is not covered by the general release at issue here.

Thereafter, the Halpins obtained a home equity line of credit from the Bank. This credit line was secured by a second mortgage on the Bailey House, and was used by the Halpins to make other repairs at the marina and to provide additional financing for the new docks. The Bank also argues that this

---

1. The court made a similar ruling with regard to the counterclaims asserted by the defendants, which were also dismissed with prejudice. Defendants have made no post trial motions.

loan, which had an unpaid balance of $65,-939.87 as of December 1, 1993, was not covered by the general release at issue here.

One dispute between the Bank and the Halpins involved the Cupola House. The Halpins put the Cupola House up for sale, and received a purchase offer in June 1990. However, the Bank's appraiser advised the potential purchaser that the property was not worth the offered price. That purchaser then refused to go through with the purchase. Obviously there was a controversy regarding the Bank appraiser's actions.

The Halpins then found another purchaser, one Barry Hamilton. The Bank agreed to release the Cupola House from the marina mortgage, but required the Halpins to pay down the note by $30,000 as a condition of the release. The Halpins paid the note down according to the Bank's condition. A dispute arose, however, regarding application of the paydown to the loan. The Halpins argued that the $30,000 should be applied to the principal balance, with the remaining balance amortized over the original payback period. The Bank, however, merely applied the $30,-000 to the principal without reamortization. The dispute was settled after 1½ years, and the Bank required that the Halpins execute a release in favor of the bank as a condition of the settlement. Mr. Halpin rejected the general release proposed by the Bank, and the Bank redrafted a limited release, which was executed by the Halpins. Further details of the dispute and settlement are irrelevant to this action.

In 1993 the Halpins arranged to sell the remaining marina property to Barry Hamil-

ton. Mr. Hamilton was to assume the marina loan and mortgage at the Bank, pursuant to the terms of the original note. After many months of negotiations, the Bank approved the assumption with certain conditions. Among those conditions were that the marina note be paid down by $50,000, and that the transfer of property would include the underwater easement and new docks. The underwater easement and new docks would be additional security for the mortgage. Further, the Bank required an exchange of releases. The Bank prepared and executed a general release in favor of the Halpins on December 2, 1993.[2] The Bank also prepared a general release and sent it to the Halpins in California. After negotiating a settlement regarding past due interest on the marina loan, the Halpins executed the release in favor of the Bank on December 6, 1993. The closing for the marina property transfer and loan assumption by Barry Hamilton occurred on or about December 7, 1993.

Interestingly, the Halpins withdrew $2,700.00 from their credit line on December 4, 1993. Thereafter, the Halpins offered to return that amount to the Bank, while continuing to assert that the general releases exchanged after December 4 applied to that amount as well as the remaining balances on the credit line loan and the home equity loan.

The Halpins' credit line and home equity loans fell into default, and they notified the bank that this indebtedness was absolved by the Bank pursuant to the general release executed by the Bank in favor of the Halpins. The Bank disagreed, and tendered as "Amended and Revised General Release"[3]

2. The release declares, in pertinent part, that

ALBANY SAVINGS BANK ... has remised, released, and forever discharged, and by these presents does for their heirs, successors and assigns, remise, release, and forever discharge the said Jack Halpin & JoAnne Halpin ... of and from all, and all manner of action and actions, cause and causes action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which against Jack Halpin & JoAnne Halpin they ever had, now have or in the future can, shall, or may have, upon or by reason of any matter, cause or

thing whatsoever from the beginning of the world to the day of the date of these presents limited, however, to any claim or cause of action.

This release may not be changed orally....

(Compl.Ex. A.)

3. This release was significantly different from the general release previously executed. The revised version released and discharged the Halpins from

only those claims, causes of action, etc. arising out of a Note and Mortgage executed and delivered by Jack Halpin and JoAnne Halpin on June 28, 1988 to Champlain Valley Federal Savings & Loan Association of Plattsburgh, now known as Albany Savings Bank, FSB, in

which contained language limiting the scope of the release to the marina loan and Hamilton mortgage assumption. The Halpins returned the limited release to the Bank stating that it was invalid, and made no further payments to the Bank. The Bank then filed this action, seeking a declaration that the general release was limited to the marina loan and Hamilton mortgage assumption, money damages for nonpayment on the credit line and home equity loans, and attorneys fees and costs of bringing this action.

## DISCUSSION

### I. Standard Governing Rule 59(a) and 59(e) Motions

█ Plaintiff has moved for a new trial or in the alternative for an alteration of the judgment. *See* Fed.R.Civ.P. 59. This motion is based upon alleged errors of law made by the court in ruling parol evidence inadmissible, in dismissing the action without considering equitable relief, and in ordering dismissal with prejudice. Thus, the plaintiff is in essence seeking reconsideration of the court's prior orders on these issues. A court will reconsider a prior decision in only three circumstances: where the movant establishes "(1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear error or prevent manifest injustice." *Bartz v. Agway, Inc.*, 849 F.Supp. 166, 167 (N.D.N.Y.1994) (citations omitted); *Oxford House, Inc. v. City of Albany*, 155 F.R.D. 409, 410 (N.D.N.Y.1994); *Atlantic States Legal Found., Inc. v. Karg Bros., Inc.*, 841 F.Supp. 51, 53 (N.D.N.Y.1993). At issue here is whether the court's prior orders were clear error or will create manifest injustice.

### II. Parol Evidence

█ State law, in this case New York law, applies in determining the effect of a general release. *Cordaro v. Lusardi*, 354 F.Supp. 1147, 1150 (S.D.N.Y.1973). Under New York law, the general law of contracts applies in interpreting a release. *Cahill v. Regan*, 5 N.Y.2d 292, 299, 184 N.Y.S.2d 348, 157 N.E.2d 505 (1959). A release may not "be treated lightly," and should be set aside or reformed only "under circumstances and under rules which would render any other result a grave injustice." *Mangini v. McClurg*, 24 N.Y.2d 556, 563, 301 N.Y.S.2d 508, 249 N.E.2d 386 (1969). Thus, a general release stands absent duress, illegality, fraud, or mutual mistake. *Id.; Cahill*, 5 N.Y.2d at 299, 184 N.Y.S.2d 348, 157 N.E.2d 505; *Farnham v. Farnham*, 204 A.D. 573, 574, 198 N.Y.S. 771 (2d Dep't 1923). The intent of the parties governs the scope of a release, and that intent may be determined based upon parol evidence where the language of the release is unclear, *see Middle East Banking Co. v. State Street Bank Int'l*, 821 F.2d 897, 907 (2d Cir.1987); *Bank of America Nat'l Trust and Savings Ass'n v. Gillaizeau*, 766 F.2d 709, 714 (2d Cir.1984); *American Home Products Corp. v. Liberty Mutual Ins. Co.*, 748 F.2d 760, 765 (2d Cir. 1984); *Mangini*, 24 N.Y.2d at 563, 301 N.Y.S.2d 508, 249 N.E.2d 386; *Cahill*, 5 N.Y.2d at 299, 184 N.Y.S.2d 348, 157 N.E.2d 505; *see also Galusha v. Schur*, 21 A.D.2d 32, 34, 247 N.Y.S.2d 988 (3d Dep't), *appeal denied*, 14 N.Y.2d 485, 251 N.Y.S.2d 1025, 200 N.E.2d 219 (1964), or where the liability was not known by or within the contemplation of the parties at the time the release was executed, *Cordaro*, 354 F.Supp. at 1150–51; *Bradley Realty Corp. v. New York*, 54 A.D.2d 1104, 1105, 389 N.Y.S.2d 198 (4th Dep't 1976); *Simon v. Simon*, 274 A.D. 447, 449–50, 84 N.Y.S.2d 307 (1st Dep't 1948); *Farnham*, 204 A.D. at 574, 198 N.Y.S. 771. Thus, under New York law, parol evidence is not admissible to determine the scope of an unambiguous general release where no duress, illegality, fraud, or mutual mistake is alleged and where the liability is known and contemplated by the parties.

█ In this case, the plaintiff executed and delivered a general release in favor of

---

the principal amount of $234,500.00 which Mortgage was recorded on June 28, 1989 in the [sic] Essex County Clerk's Officer in Liber 546 at Page 19, covering premises commonly known as the Essex Marina Property, Main Street, Town of Essex.

This Release is intended to rescind and supersede [sic] a General Release from Albany Savings Bank, FSB to Jack Halpin and JoAnne Halpin dated December 2, 1993 . . . . (Compl.Ex. C.) This limited release was executed by the Bank on January 31, 1994.

the defendants. The plaintiff prepared the release. Both the plaintiff and defendants have extensive experience in these types of matters, and are sophisticated in business dealings. The parties have engaged in business dealings with each other over many years, and have had a considerable number of disputes regarding those dealings.[4] The plaintiff has not alleged any duress, illegality, fraud, or mutual mistake, and it was well aware of the extent of defendants' indebtedness to the Bank at the time it executed the general release. Finally, the intent of the parties as to the general scope of the release is clear from the unequivocal language of the release.

The plaintiff argues that New York law permits the consideration of extrinsic evidence to determine the scope of an unambiguous general release. The plaintiff cites several cases in support of this proposition, none of which is on all fours with the circumstances in this case, and each of which falls into one of the categories of exceptions where parol evidence is admissible.

Plaintiff first cites *Mangini*, in which a general release pertaining to minor injuries sustained in a vehicle accident was signed. 24 N.Y.2d at 561, 301 N.Y.S.2d 508, 249 N.E.2d 386. It was later discovered that an additional, severe injury was sustained. *Id.* at 561–62, 301 N.Y.S.2d 508, 249 N.E.2d 386. The court reasoned that there was a mutual mistake, in that the parties did not know of or contemplate the severe injury when the release was signed. *Id.* at 564, 301 N.Y.S.2d 508, 249 N.E.2d 386. Therefore, the court reversed a grant of summary judgment, finding that an issue of fact remained as to the intent of the parties. *Id.* at 569, 301 N.Y.S.2d 508, 249 N.E.2d 386. The reasoning of the *Mangini* Court is inapplicable here, since the parties were clearly aware of all the defendants' outstanding loans, and there is no allegation of mutual mistake.

Similarly, the court in *Cahill* found that a patent which was not in existence at the time of execution of a general release could not be considered within the contemplation of the parties and was therefore outside the scope of the release. 5 N.Y.2d at 299, 184 N.Y.S.2d 348, 157 N.E.2d 505. In *Cahill* an employer executed a general release in favor of a former employee, which the employee used as a defense in a later suit by the employer. *Id.* Although the employee had applied for the patent prior to execution of the release, the employer was not aware of the application. *Id.* The court therefore found that the release did not bar the employer's suit claiming rights in the patent. *Id.* This liability fell within the category of "uncontemplated" and therefore was exempt from the parol evidence rule. In contrast, the Bank was well aware of the extent of the Halpins' current indebtedness at the time it executed the release.

In *Gardstein v. Kemp & Beatley, Inc.*, No. 82 Civ. 0781 (MEL), 1987 WL 7378, at *1–2 (S.D.N.Y. Feb. 20, 1987), minority shareholders brought a prior action against majority shareholders alleging "oppressive action" in violation of N.Y.Bus.Corp.Law § 1104–a(a)(1). The prior action was settled, and the minority shareholders executed a general release. *Id.* The court held that a question of fact existed as to whether the phrase "oppressive action" was intended by the parties to include an Age Discrimination in Employment Act action by the minority shareholder against the corporation. *Id.* Thus, the reasoning of the court in permitting extrinsic testimony into the intent of the parties rested upon the ambiguity of the phrase "oppressive action." *See id.* In this case, the language of the release is not ambiguous.

Similarly, in *D'Antonio v. American Brands, Inc.*, Civ. No. B–89–461 (WWE), 1991 WL 23533, at *3 (D.Conn. Jan. 16, 1991), the court held that where a release

---

4. In fact, the settlement of one such dispute included execution of a limited release by the defendants in favor of the Bank after the defendants refused to sign a general release prepared and submitted to them by the Bank. Based upon this experience, and the other dealings with the Halpins, a sophisticated party, such as the Bank, should have been alert to the need for specific

limiting language if it wished to only release the Halpins from part and not all of their obligations to the plaintiff. Instead, the Bank prepared, executed, and exchanged a general release which could hardly be more broad and all encompassing. *See supra* note 2. It was not until almost two months later that the Bank unsuccessfully attempted to limit the release. *See supra* note 3.

was ambiguous, intent of the parties remained an issue for trial. The court noted that an ambiguous contract must be construed against the drafting party. *Id.*

In *Cordaro,* the court considered the affirmative defense of release on a motion to dismiss, which was converted to one for summary judgment. 354 F.Supp. at 1149; *see* Fed.R.Civ.P. 12(b). In that case, a general release was signed settling a prior claim of property damage. 354 F.Supp. at 1149. The defendant then argued that the release barred a claim for personal injuries sustained in the same motor vehicle accident. *Id.* The court found that under New York's liberal view as to general releases, the effect of the release depended upon what was contemplated by the parties. *Id.* at 1150–51. Although the court's recitation of New York law appears equivocal as to when parol evidence is permissible to determine the scope of a general release, it should be noted that the court cited *Cahill* and *Mangini,* both of which pertained to "unknown" liabilities, as authority for it's restatement of the law. Thus, this court views the *Cordaro* court's finding as just that: a restatement of New York law, rather than an extension of that law. The *Cordaro* decision therefore does not support plaintiff's proposition that under New York law parol evidence is always admissible to determine the scope of a general release.

In *Simon,* 274 A.D. at 449–50, 84 N.Y.S.2d 307, the court found that the parties could not have contemplated a title dispute at the time a general release was executed because the title dispute arose subsequent to execution of the release. The court therefore held that the title dispute was outside the scope of the general release, the purpose of which was a property settlement due to divorce. *Id.* at 450, 84 N.Y.S.2d 307. Again, this 1948 case does not support plaintiff's proposition because it fails to account for the gloss imparted by subsequent case law. *See, e.g., Middle East Banking Co.,* 821 F.2d at 907; *Bank of America Nat'l Trust and Savings Ass'n,* 766 F.2d at 714; *American Home Products Corp.,* 748 F.2d at 765; *Cordaro,* 354 F.Supp. at 1150–51; *Mangini,* 24 N.Y.2d at 563, 301 N.Y.S.2d 508, 249 N.E.2d 386; *Cahill,* 5 N.Y.2d at 299, 184 N.Y.S.2d 348, 157 N.E.2d

505; *Bradley Realty Corp.,* 54 A.D.2d at 1105, 389 N.Y.S.2d 198; *Galusha,* 21 A.D.2d at 34, 247 N.Y.S.2d 988; *Farnham,* 204 A.D. at 574, 198 N.Y.S. 771.

The plaintiff also cites three cases for the proposition that not all predated claims are barred by a subsequent general release. In *Lefrak SBN Assocs. v. Kennedy Galleries, Inc.,* 203 A.D.2d 256, 256, 609 N.Y.S.2d 651 (2d Dep't 1994), a landlord sued to recover unpaid rent and the tenant claimed a subsequent release as a defense. The unpaid rent at issue consisted of operating expenses, the amount of which the landlord had notified the tenant in 1990. *Id.* at 257, 609 N.Y.S.2d 651. Litigation involving construction costs was then settled, with the landlord executing a general release in favor of the tenant. *Id.* The court held that it was clear that the parties did not intend the release to cover the preexisting claim for operating expenses. *Id.* Thus, a preexisting claim was not barred by a subsequent release, as the plaintiff argues. Although the court did not reveal the wording used in the release, it is presumed to have been general in scope. In *Lefrak SBN* disputes regarding construction costs on one hand, and operating expenses/rent on the other hand, are clearly unrelated. Here, however, the Halpins' loans and the properties required by the Bank as security were interwoven and the parties had an antagonistic relationship. Thus, the Bank's general release was not clearly intended to pertain only to the marina note and mortgage since the transactions at issue were related.

In *Farnham,* 204 A.D. at 573–74, 198 N.Y.S. 771, the court held that where a claim did not mature until after a general release was executed, the later claim was not within the scope of the release. The *Farnham* Court in 1923 noted the parol evidence was not admissible to construe a release absent "fraud, mistake, duress or some like cause." *Id.* at 574, 198 N.Y.S. 771.

In *Sage v. Hale,* 80 Misc.2d 812, 364 N.Y.S.2d 781, 783 (N.Y.Sup.Ct.1975), the defendant-third party plaintiff executed a release in favor of the third party defendant, which was titled "general release" but which contained the limiting statement releasing "all claims for personal injuries sustained by

me." The plaintiff then brought suit for personal injuries which she sustained. *Id.* By special interrogatory the jury found in favor of the plaintiff and attributed 75% fault to the defendant-third party plaintiff and 25% fault to the third-party defendant. *Id.* The third party defendant's argument that this subsequent liability was within the scope of the general release was rejected by the court. *Id.* 364 N.Y.S.2d at 784. The court found that the release was limited by its own language to injuries suffered by the defendant-third party plaintiff, and did not apply to injuries suffered by the plaintiff. *Id.* 364 N.Y.S.2d at 785. *Sage* is therefore distinguishable from the case at bar since the release at issue here contains no limiting language.

Finally, the plaintiff cited two cases during argument at the trial which deserve mention. In *Concepcion v. United States Navy,* 575 F.Supp. 23, 24–25 (S.D.N.Y.1983), the plaintiff suffered injuries in two incidents, first aboard the U.S.N.S. Sealift Antarctic in 1978, and later, in 1979, aboard the U.S.N.S. Potomac. The court held that a general release executed in settlement of injuries suffered aboard the Sealift Antarctic did not bar a later suit for injuries suffered aboard the Potomac, although the release was executed after the injury aboard the Potomac occurred. *Id.* at 25. The court, finding that a general release which refers to specific claims requires construction, held that the language of the release clearly referred to injuries suffered aboard the Sealift Antarctic.[5] *Id.* Unlike the case at bar, the *Concepcion* release contained limiting language. Here, the release did not contain limiting language, but generally released defendants.

*In re American Export Lines, Inc.,* 620 F.Supp. 490 (S.D.N.Y.1985), was an admiralty case and the court applied federal law. However, the court looked to New York state law in defining federal law. *See id.* at 516. That court's reasoning and holding provide guidance to this court only to the extent that the law applied is similar to New York law. The court stated that where "the language of

the release is clear, ... the intent of the parties [is] indicated by the language employed" when counsel is available to the parties, who are approximately equivalent bargaining position, and the release is signed in a commercial context. *Id.* (internal quotations and citations omitted). Thus, the court found that the release, which referred to patent infringement and completion of performance of a construction contract, did not bar suits alleging breach of contract or tortious conduct. *Id.* at 516–17. Again, as in *Concepcion,* the release at issue in *American Export Lines* contained limiting language which the courts found clearly expressed the parties intent, whereas here the release contains only general language.

A close reading of the case law thus establishes that under New York state law where there is no ambiguity and the facts do not fall within one of the categories which provide an exemption from the parol evidence rule, the intent of the parties as to the scope of the release must be derived from the language of the release itself. Therefore the court properly excluded parol evidence. To rule otherwise upon the facts of this case would mean that in every instance a general release could be attacked by parol evidence. The validity and enforceability of all general releases would be in doubt and absolute closure in disputes would be difficult if not impossible to achieve.

### III. Equitable Relief

■ Plaintiff's second ground for a new trial is that the court erred in failing to liberally construe the complaint as seeking equitable relief. Plaintiff contends that although the complaint did not specifically request equitable relief, sufficient facts were set forth to state such a claim. Be that as it may, the plaintiff specifically disavowed any claim for equitable relief and therefore cannot now claim that the court was in error in failing to consider it. (*See* Pl.'s Mem.Law Opp'n, filed Sept. 29, 1995, at 3.)

---

5. The release discharged the U.S.N.S. Sealift Antarctic and her owners from "injuries sustained on or about July 19, 1978 while employed aboard the U.S.N.S. Sealift Antarctic." *Id.* at 24–25 n. 1.

## IV. Dismissal with Prejudice

 Finally, plaintiff contends that the court erred in dismissing the case with prejudice. Plaintiff argues that it should have the opportunity to replead its case to include equitable relief. As previously discussed, plaintiff specifically disavowed any claim for equitable relief. Moreover, plaintiff did not object to defendants' motion to dismiss, with prejudice, due to plaintiff's inability to set forth a prima facie case in the absence of parol evidence to limit the general release executed by the Bank in favor of the defendants. (*See* Pl.'s Not.Mot.Ex. A, filed Dec. 8, 1995, at 19–20.)

### *CONCLUSION*

Accordingly, it is

ORDERED, that plaintiff's motion for reconsideration is DENIED.

IT IS SO ORDERED.