Fuld, J.
This case involves the question of whether a patent for a particular article, invented by defendant employee, belongs to him or to his employers, the plaintiffs herein. The trial court found in favor of the defendant; the Appellate Division modified the judgment, deciding that, although the patent belonged to the defendant, the plaintiffs had a “ shop right” to use it. Both parties have cross-appealed to this court.
The plaintiffs, in their capacity as executors of the estate of the deceased William Boberts, are carrying on the business which Boberts had owned during his lifetime, the Melvina Can Company. In October, 1947, James Cahill, the chief executive *296 officer of the company, induced the defendant to give up his own business and take over the management of Melvina to “ see if we could make a going business out of it.” In addition to his supervisory duties, and this was one of Cahill’s principal reasons for hiring him, the defendant was engaged to 11 design cans and can dies ”, an occupation in which he had previously been employed. He had also been selling machinery and equipment and accepted the new position on condition that he might do some selling of machinery on his own.
Melvina was engaged in manufacturing “ tear-strip ” ammunition cans which could be used but once. Learning of the Navy’s interest in obtaining re-usable containers somewhat similar to a German product, the defendant directed himself to the subject and produced a re-usable can which Melvina proceeded to manufacture. In July of 1950, the defendant applied for a patent which he obtained two years later. In the interval, he had a dispute with Roberts and Cahill over the ownership of some machinery in the former’s possession and, in October, 1950, he left Melvina and brought a replevin action against Roberts. The lawsuit was settled several months later, with an exchange of general releases. Roberts died in 1952, and the plaintiffs commenced the present suit in 1953, seeking a declaratory judgment that they were the owners of the defendant’s patent.
If an employee is hired to invent or is given the task of devoting his efforts to a particular problem, the resulting invention is the employer’s, and any patent obtained by the employee must be assigned to the other. (See, e.g., Standard Parts Co. v. Peck, 264 U. S. 52; Marshall v. Golgate-Palmolive-Peet Co., 175 F. 2d 215, 217.) On the other hand, an employee whose employment is “ general ” is entitled to retain any patent which he procures and need not assign it to his employer, even though his employment “ cover a field of labor and effort in the performance of which the employee conceived the invention for which he obtained a patent ”. (United States v. Dubilier Condenser Corp., 289 U. S. 178, 187; see, also, Dalzell v. Dueber Mfg. Co., 149 U. S. 315, 320; Talbot v. Harrison, 150 Misc. 798, 799, affd. 240 App. Div. 957; cf. Burr v. De La Vergne, 102 N. Y. 415, 419; Houghton v. United States, 23 F. 2d 386; see, also Toulmin, Handbook of Patents [2d ed., 1954], *297 p. 430.) Indeed, even where an employee is hired to “ devote his time and services to devising and making improvements in articles * * * . manufactured” in his place of employment, he is entitled to enjoy the fruits of any invention which he conceives while so employed and is under no duty to turn the patent obtained over to the employer “ in the absence of an express agreement to that effect.” (Dalzell v. Dueber Mfg. Co., 149 U. S. 315, 320, supra; Talbot v. Harrison, 150 Misc. 798, 799, affd. 240 App. Div. 957, supra; cf. Standard Parts Co. v. Peck, 264 U. S. 52, 59, supra; Drew & Co. v. Reinhard, 170 F. 2d 679, 681.)
In determining whether an employee has been directed to invent a particular device, a distinction must be drawn between “the inventive act, the birth of an idea” and the “embodiment ” of that idea “ in a mechanism or a physical or chemical aggregate ”. (United States v. Dubilier Condenser Corp., 289 U. S. 178, 188, supra.) As the Supreme Court wrote in the Dubilier case, employment ‘ ‘ to design or to construct or to devise methods of manufacture is not the same as employment to invent” (p. 188). And, by the same token, a direction to an employee to develop an idea which he had already conceived on his own is not a direction to invent and does not entitle the employer to the invention or the patent on it.
The courts below, on their appraisal of the record, found that the defendant had been hired to manage and supervise the Melvina Can Company and, accordingly, concluded that he was entitled to the article which he invented and was not required to assign his patent to his employer. The plaintiffs, however, contend that the evidence does not support this conclusion; they argue that the defendant, even if not hired to invent, was actually assigned the task of devoting his efforts to a particular problem, namely, the invention of a re-usable can—in which event, “the resulting invention belongs to the employer.” (Marshall v. Colgate-Palmolive-Peet Co., 175 F. 2d 215, 217, supra; see, also, Houghton v. United States, 23 F. 2d 386, supra.) We find no support for the employer’s position. It is our view, as it was that of the courts below, that Cahill did not direct the defendant to devote his time to inventing a new can, but rather told him that he should, with the company’s equipment and materials, work on the idea of such a can, which *298 he had already conceived, and see what conld be accomplished. It is true that the defendant was, among other things, hired generally to design cans, but that does not entitle the employer to the patent since there was no agreement to assign it to him. (Dalzell v. Bueber Mfg. Co., 149 U. S. 315, 320, supra.)
This brings us to the question of whether the employer is entitled to a shop right, that is, a right to use the invention. Although the plaintiffs did not claim such a right in their complaint or urge it upon the trial, the AppeEate Division could, and very properly did, consider and decide the matter. (See, e.g., Rentways v. O’Neill Milk & Cream Co., 308 N. Y. 342, 349; Persky v. Bank of America Nat. Assn., 261 N. Y. 212; see, also, Vestal, Sua Sponte Consideration in AppeEate Review, 27 Fordham L. Rev. 477.) Moreover, in an action for a declaratory judgment, the court has an exceedingly broad discretion in deciding the issues. A plaintiff wiE not, for instance, be denied relief merely because he does not ask for the reHef to which he might be entitled; where it appears that ‘ ‘ the discretionary and extraordinary powers of the court have been invoked for a sufficient reason ’ ’, we have said, the court wiE ‘ ‘ retain jurisdiction of the action and * * * exercise its power to declare the rights and legal relations of the parties whatever they may be.” (Rockland Light & Power Co. v. City of New York, 289 N. Y. 45, 50, 51.)
Despite the fact, then, that an employee may have an exclusive right to the patent, the employer wiE gain a shop right to use the invention if the employee, in developing his ideas, did so on his employer’s time and with his machinery, material and money. (See, e.g., United States v. Dubilier Condenser Corp., 289 U. S. 178, 188, supra; Solomons v. United States, 137 U. S. 342, 346; see, also, Toulmin, op. cit., p. 431.) As the Supreme Court wrote in the Dubilier case (289 U. S. 178, 188-189),
“ Recognition of the nature of the act of invention also defines the limits of the so-caEed shop-right, which shortly stated, is that where a servant, during his hours of employment, working with his master’s materials and appfiances, conceives and perfects an invention for which he obtains a patent, he must accord his *299 master a non-exclusive right to practice the invention. [Cases cited.] This is an application of equitable principles. Since the servant uses his master’s time, facilities and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances in his business.”
The defendant herein does not dispute the fact that his employer paid for the professional drawings of his sketches and for the making of the dies and allowed him the use of its machine shop to perfect his samples. Under such circumstances as these, the plaintiffs are entitled to a shop right in the invention.
The defendant urges, however, that the general release executed by Roberts extinguished any and all rights and claims which the employer might have had, including a claim to the patent or to the shop right. Although the effect of a general release, in the absence of fraud or mutual mistake, cannot be limited or curtailed (see Lucio v. Curran, 2 N Y 2d 157, 161; Kirchner v. New Home Sewing Mach. Co., 135 N. Y, 182, 188), its meaning and coverage necessarily depend, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given. Certainly, a release may not be read to cover matters which the parties did not desire or intend to dispose of, In the case before us, the defendant, without the knowledge of his employer, applied for the patent in July of 1950. The replevin action, commenced some months earlier, was settled and general releases exchanged in April, 1951, more than a year before the patent was issued to the defendant. When the releases were executed, it is clear, the parties were solely concerned with settling the controversy then being litigated, the ownership of machinery in the employer’s possession, a subject having no relation to the invention or the patent. Indeed, not only was no patent then in existence, but the employer was not even aware that one had been applied for. In the light of such facts, the Appellate Division was fully justified in concluding that Roberts’ release covered and barred only those matters about which there had been some dispute *300 (see Simon v. Simon, 274 App. Div. 447, 451), not a possible future claim by the employer that he owned the patent or had a shop right to practice the inventions.
The judgment of the Appellate Division should be affirmed, without costs.
Chief Judge Conway and Judges Desmond, Dye, Froessel, Van Voorhis and Burke concur.
Judgment affirmed.