■ Senate Insurance Company, Appellant, v Randall J. Ezick, Respondent. [719 NYS2d 726] —Mercure, J. Appeal from an order of the Supreme Court (Keegan, J.), entered February 25, 2000 in Albany County, which granted defendant's motion for summary judgment dismissing the complaint.

At all times relevant to this appeal, Lawrence Group, Inc. (hereinafter LGI) was a holding company for various insurance agency and underwriting components. Plaintiff, an Arizona insurance company, was a wholly owned subsidiary of United Republic Insurance Company, which was principally owned by Lawrence Insurance Group, Inc., 93% of which was owned by LGI. Barbara Lawrence (hereinafter Lawrence) had been a 50% shareholder in LGI but divested herself of her interest in April 1996. Two days later, she contracted to sell plaintiff an office building at 430 State Street in the City of Schenectady,

Schenectady County, which served as plaintiff's corporate head-quarters, for $2.6 million. Although the written contract provided that the property was to be conveyed to plaintiff by warranty deed, free and clear of all liens and encumbrances, title was conveyed by a quitclaim deed and plaintiff took the property subject to a blanket mortgage in favor of Fleet Bank. Rather than extinguish liens against the property out of the purchase moneys, Lawrence loaned the sale proceeds to LGI in exchange for a series of demand notes secured by 820,909 shares of Mechanical Technology, Inc. (hereinafter MTI) stock.

In February 1997, Lawrence and LGI filed bankruptcy petitions. In connection with the bankruptcy proceeding, Lawrence and a number of other entities claimed an interest in the MTI stock and in September 1997, LGI initiated an adversary proceeding seeking to have it declared the actual owner of the stock. Plaintiff thereafter moved to intervene in that proceeding, claiming an equitable interest in the stock, as the ultimate proceeds of the sale of the 430 State Street property which had been improperly funneled into LGI rather than utilized to satisfy liens against the realty. Ultimately, the adversary proceeding was settled and plaintiff, Lawrence, LGI and a number of other parties, which need not be identified here, entered into a settlement agreement.

In the settlement agreement, which was approved by a February 1999 order of the Bankruptcy Court, plaintiff withdrew and waived its $2.6 million claim against the chapter 11 estate of Lawrence. The settlement agreement also contained the following "mutual releases" clause: "Except as otherwise provided in this Agreement, each party to this Agreement does hereby release, remise, acquit and forever discharge all other parties hereto of and from any and all claims, demands, actions or causes of action, of any kind or nature, arising from or in any way related to MTI, the 1996 Purchase, the Global Repurchase, the Global MTI Shares, the LGI MTI Shares, the Sold MTI Shares, the First Albany Sale, the Adversary Proceeding or any allegation or cause of action that was set forth or that could have been set forth in the Adversary Proceeding. This is a full and final release of the above-described claims and covers all such claims whether known or unknown, suspected or unsuspected. This paragraph shall inure to the benefit of the officers, directors, employees, agents and attorneys of the parties hereto. This paragraph shall not release or otherwise affect the liability of any other person or entity, including but not limited to First Albany."

In September 1999, plaintiff commenced this legal malprac-

tice action alleging defendant's negligence in failing to ensure that plaintiff received clear and unencumbered title to the 430 State Street property by warranty deed, as provided in the contract of sale, in exchange for plaintiff's payment of the $2.6 million purchase price. In his answer, defendant asserted affirmative defenses, among others, based on the doctrines of release, waiver and settlement. Defendant then moved for summary judgment dismissing the complaint upon the ground that plaintiff had in the settlement agreement released defendant from any liability for the conduct alleged in the complaint. Supreme Court granted the motion and dismissed the complaint. Plaintiff appeals.

Because we cannot subscribe to Supreme Court's conclusion that "the unambiguous, encompassing language of the [settlement agreement], [plaintiff's] role as a party to the [settlement agreement], the consideration it received, and [defendant's] undeniable status [as an employee of and counsel to LGI], warrant summary judgment dismissing the complaint on the basis of release," we are constrained to reverse Supreme Court's order and deny defendant's motion. Initially, contrary to Supreme Court's observation that defendant's status as employee of and counsel to LGI "remains uncontroverted," our review of the record discloses abundant evidence to support a finding that defendant was plaintiff's general counsel and that he represented plaintiff in connection with its purchase of the 430 State Street property. Notably, defendant is listed as the "buyer's attorney" on the real property transfer report that was filed in connection with the transaction, and the deed to plaintiff contains a statement that the instrument should be recorded and returned by mail to defendant. Even more compelling are letters dated June 18, 1996 and August 8, 1996 from plaintiff to representatives of the Arizona Department of Insurance, which are signed under plaintiff's name by defendant in his capacity as "General Counsel." Although defendant may have also served as general counsel to LGI, the record provides no competent basis for a finding that LGI was a party to the 430 State Street transaction, the inescapable conclusion being that defendant represented plaintiff and not LGI in connection with the subject real estate transaction.

Nor are we persuaded by defendant's contention that the settlement agreement arose out of the 430 State Street transaction such that plaintiff's claim against defendant may be reasonably found to have been encompassed within its mutual release clause. It is fundamental law that " '[i]n construing a general release it is appropriate to look to the controversy be-

ing settled and the purpose for which the release was executed * * * [and] "a release may not be read to cover matters which the parties did not desire or intend to dispose of" ' " (*Zilinskas v Westinghouse Elec. Corp.* 248 AD2d 777, 779, quoting *Metz v Metz*, 175 AD2d 938, 939-940, quoting *Cahill v Regan*, 5 NY2d 292, 299). Although plaintiff's alleged interest in the MTI stock surely had its genesis in the 430 State Street transaction, the clear subject of the dispute that was resolved in the settlement agreement was the parties' competing claims to the MTI stock. In fact, as previously set forth, the express terms of the mutual release clause limited its coverage to claims "arising from or in any way related to MTI, the 1996 Purchase, the Global Repurchase, the Global MTI Shares, the LGI MTI Shares, the Sold MTI Shares, the First Albany Sale, the Adversary Proceeding or any allegation or cause of action that was set forth or that could have been set forth in the Adversary Proceeding." As clearly defined in the settlement agreement, all of those matters were directly related to the MTI stock and had nothing at all to do with the real estate transaction forming the basis for plaintiff's present claim. In fact, as properly urged by plaintiff, its present claim could not under any circumstances have been "set forth in the Adversary Proceeding."

Under the circumstances, we conclude that plaintiff's evidentiary showing in opposition to the summary judgment motion raised a triable question of fact on the issue of whether the present claim was encompassed within and released by the settlement agreement (*see, Zilinskas v Westinghouse Elec. Corp., supra*, at 779). The decision of the Court of Appeals in *Wells v Shearson Lehman/Am. Express* (72 NY2d 11) by no means dictates a contrary result.

We have considered defendant's remaining contentions, including the argument that as an employee of LGI, the settlement agreement inures to his benefit even if he represented plaintiff in its purchase of the 430 State Street property, and find them to be unavailing.

Crew III, Peters and Rose, JJ., concur; Cardona, P. J., not taking part. Ordered that the order is reversed, on the law, with costs, and motion denied.