12-1517-bk
*XO Commc'ns, LLC v. Davis*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 12th day of December, two thousand twelve.

PRESENT:   DENNY CHIN,
           CHRISTOPHER F. DRONEY,
                   <u>Circuit Judges</u>,
           JOHN GLEESON,
                   <u>District Judge</u>.[*]

- - - - - - - - - - - - - - - - - - - -x

IN RE:  ALLEGIANCE TELECOM, INC., et al.
                   <u>Debtors.</u>

- - - - - - - - - - - - - - - - - - - -x

XO COMMUNICATIONS, LLC,
                   <u>Creditor-Appellant</u>,

       -v.-                                    12-1517-bk

EUGENE I. DAVIS, Plan Administrator
of Allegiance Telecom Liquidating Trust,
                   <u>Appellee.</u>[**]
- - - - - - - - - - - - - - - - - - - -x

FOR APPELLANT:          MARTIN S. SIEGEL (Emilio A. Galván, <u>on the brief</u>), Brown Rudnick, LLP, New York, NY.

FOR APPELLEE:           ABID QURESHI (Ira S. Dizengoff, Kenneth A. Davis, Sunish Gulati, <u>on the brief</u>), Akin Gump Strauss Hauer & Feld LLP, New York, NY.

---

[*]     The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation.

[**]    The Clerk of the Court is directed to amend the official caption to conform to the above.

Appeal from the United States District Court for the Southern District of New York (Castel, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's March 28, 2012 memorandum and order is **AFFIRMED**.

Creditor-Appellant XO Communications, LLC ("XO") appeals from the district court's order directing the release of escrow funds to appellee Eugene L. Davis, the Plan Administrator for the Allegiance Telecom Liquidating Trust ("ATLT"), pursuant to the terms of an asset purchase agreement (the "APA") executed between XO and ATLT's predecessors, Allegiance Telecom, Inc. and Allegiance Telecom Company Worldwide (collectively "Allegiance"), by which XO purchased Allegiance's assets. We assume the parties' familiarity with the facts, procedural history, and specification of issues for review.

The APA called for a portion of the purchase price to be placed in escrow, in the event that Allegiance's actual working capital after XO assumed control differed from an earlier estimate and an adjustment to the purchase price became necessary. Disputes arose between ATLT and XO as to, inter alia, the amount of any adjustment based on the working capital. On November 5, 2008, the bankruptcy court approved a global settlement of all disagreements between ATLT and XO, including the price adjustment dispute. The settlement included broad mutual releases of any claims related to the APA, but was silent as to the disposition of the escrow account. Neither XO nor ATLT sought to recover the escrow funds before the bankruptcy closed on October 5, 2010. Finally, in June 2011, the

-2-

bankruptcy case was reopened and ATLT sought an order releasing the escrow funds.  In light of the mutual releases in the settlement, the bankruptcy court (Drain, Bankr. J.) held that both parties had released any claim they had to the escrow account under the APA and thus the escrow account "revert[ed] to XO as the . . . depositor of such funds."  On appeal, the district court reversed, holding that ATLT was entitled to the escrow funds under the APA.  XO appeals.

"An order of a district court issued in its capacity as an appellate court is subject to plenary review."  Liona Corp. v. PCH Assocs. (In re PCH Assocs.), 949 F.2d 585, 597 (2d Cir. 1991).  Accordingly, we independently review the bankruptcy court's findings of fact for clear error and its legal conclusions de novo.  Id.  The interpretation of a contract in bankruptcy is governed by state law principles and also reviewed de novo.  See Nw. Mut. Life Ins. Co. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.), 608 F.3d 139, 145–46 (2d Cir. 2010).

We agree with the district court and conclude that Allegiance was entitled to the escrow funds after the price adjustment dispute was settled because the funds were part of the original purchase price.  Section 3.2(a) defines the "Purchase Price" as consisting of, inter alia, $311.2 million.  Subsection (b) carves out an "Adjustment Escrow Amount" from the cash payment XO was supposed to make directly to Allegiance and directs XO to transfer this amount to an escrow account.  Section 3.2(b)(iii) explains the purpose of the escrow account:

> Any payment [Allegiance is] obligated to make
> to [XO] pursuant to Sections 3.4 and/or 3.6

-3-

> [related to working capital adjustments] shall be paid <u>from the Adjustment Escrow Amount</u> plus accrued interest thereon.  <u>After payment</u> of any required amounts pursuant to Sections 3.4 and 3.6, the Adjustment Escrow Agent shall <u>release the residual amounts</u> of the Adjustment Escrow Amount remaining in the Adjustment Escrow Account <u>to [Allegiance]</u>.

APA § 3.2(b)(iii) (emphasis added).  These provisions make clear the parties' intent that (1) XO was paying the funds to Allegiance to purchase the latter's assets, and (2) some portion of the funds that would otherwise belong to Allegiance would be held in escrow to account for any working capital adjustment.  The plain terms demonstrate that the funds were to go to Allegiance, subject <u>only</u> to any working capital adjustment.

Subsections (g)–(i), which provide for the disposal of the escrow account under various scenarios, reinforce this understanding.  In every possible resolution of the working capital adjustment, Allegiance would receive the balance so long as any working capital adjustment was first paid to XO.  Thus, while XO had an interest in the escrow funds, it was contingent on a voluntary agreement or a "final determination" that the actual working capital was less than the estimate.  APA § 3.2(i).  On the other hand, Allegiance's right was contingent only on a balance remaining in the escrow account after the adjustment dispute was resolved.

We conclude that once the parties settled their disputes and resolved, <u>inter alia</u>, the issue of a working capital adjustment, Allegiance became entitled to all the escrow funds, as these were part of the purchase price and no adjustment was necessary.

–4–

Moreover, ATLT, as Allegiance's successor, did not waive its right to the escrow funds in the settlement agreement.  Although the mutual releases are broad, we cannot construe them as releasing ATLT's right to the purchase price, just as we cannot construe them as releasing XO's right to the assets it acquired under the APA. Cf. Cahill v. Regan, 184 N.Y.S.2d 348, 354 (1959) (holding that the "meaning and coverage [of a general release] necessarily depend . . . upon the controversy being settled" and that "a release may not be read to cover matters which the parties did not desire or intend to dispose of").  ATLT only "discharge[d] [XO] . . . from any and all claims . . . now arising or which hereafter may arise . . . from or in any way related to the APA."  Settlement Agreement & Mut. Release art. II, ¶ C(2).  Thus, ATLT could no longer force XO to perform any obligation it had under the APA, such as paying additional amounts into the escrow account.  See APA § 3.2(h). Likewise, XO could not force ATLT to perform any of its obligations under the APA, including "[a]ny payment [Allegiance was] obligated to make to [XO] pursuant to" the working capital adjustment provisions in the APA.  See id. § 3.2(b)(iii).

We have considered XO's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk