■ ELIZABETH SCHNEE, Respondent, v JEREMIAH SCHNEE, Appellant. [973 NYS2d 25]—

Order, Supreme Court, New York County (Lori S. Sattler, J.), entered March 11, 2013, which denied defendant's motion to direct plaintiff to provide him with a general release of all claims against him, granted plaintiff's cross motion to enforce the judgment of divorce with respect to the distribution of defendant's retirement accounts, and awarded plaintiff counsel fees, unanimously affirmed, without costs.

The parties' 1998 stipulation of settlement, which was incorporated but not merged into the judgment of divorce, entitled plaintiff to maintenance, half of the equity in the marital residence upon the emancipation of the parties' youngest child, and half the value of defendant's retirement accounts as of the date of transfer.

In July 2011, the parties' youngest child was emancipated. In addition, defendant had failed to make maintenance payments. Plaintiff moved to enforce her right to maintenance arrears and a payout on the division of the marital residence, as well as for

counsel fees. Defendant cross-moved for, inter alia, the appointment of an appraiser for the marital residence, and an order directing plaintiff to issue an executed satisfaction of judgment and general release discharging his financial obligations and counsel fees.

In an order entered on May 10, 2012, Supreme Court awarded plaintiff $98,500 in maintenance arrears as well as $10,000 in counsel fees. The Court held the issue of the marital residence in abeyance and ordered the parties to appear for a conference on that issue. Defendant's cross motion was denied.

Significantly, neither party had executed the documents necessary to effectuate the transfer of plaintiff's interest in defendant's retirement accounts. Defendant apparently refused to cooperate with the preparation or execution of the qualified domestic relations order (QDRO) and failed to provide information necessary to its preparation.

On July 5, 2012, the parties entered into a settlement with respect to the maintenance arrears, attorney's fees and expenses and the marital residence, resulting in a so-ordered stipulation on that date. The first paragraph of the July 5, 2012 stipulation states: "In full satisfaction of plaintiff's claims for: (i) her 50% interest in the former marital residence; (ii) any and all maintenance arrears, whether or not reduced to judgment; and (iii) attorney's fees and expenses, and interest, cash and disbursements, Defendant shall pay plaintiff the sum of $408,000 subject to an increase as may be set forth in an actual payoff letter from the existing mortgage holder on the premises."

At the closing of the refinance, plaintiff was to execute and deliver a bargain and sale deed. Also at the closing, both parties were to "exchange unconditional mutual general releases."

Defendant prepared a general release to be executed by plaintiff which released *any and all* claims arising from this matrimonial action. At the closing, the parties' counsel entered into a mutual undertaking, which, in pertinent part, required plaintiff's counsel to deliver the release prepared by defendant after plaintiff received the $408,000. Plaintiff later refused to deliver that release to defendant on the basis that it was improper, and instead prepared and executed an amended release which preserved her claim in defendant's retirement accounts. Defendant rejected the amended release.

Supreme Court properly found that plaintiff's delivery of the amended release satisfied her obligations under the 2012 stipulation. The 2012 stipulation was unambiguously entered into to settle only the issues of maintenance arrears, plaintiff's interest in the marital residence, and counsel fees, as it sets forth in its

first paragraph. The release drafted by defendant does not reflect the parties' intentions as there is no indication that plaintiff intended to waive her interest in defendant's retirement accounts.

Properly read in context, the provision in the 2012 stipulation that calls for the parties to execute "unconditional mutual general releases" requires the parties to execute releases which apply to the issues settled by the stipulation and nothing more. Thus, interpreting the 2012 stipulation in accordance with its plain and ordinary meaning and the clear intent of the parties (*see Matter of Korosh v Korosh*, 99 AD3d 909 [2d Dept 2012]), and in light of the limited scope of the stipulation, it cannot be concluded that plaintiff intended to waive or actually waived her interest in defendant's retirement accounts.

Nor is plaintiff estopped from denying her obligation to deliver the release drafted by defendant. While it is true that a party who accepts the benefits of an agreement is estopped from later challenging the same agreement (*see Markovitz v Markovitz*, 29 AD3d 460 [1st Dept 2006]), the operative document is the 2012 stipulation and not the release or the mutual undertaking. In any event, defendant did not rely to his detriment on his belief that plaintiff would release him of all claims, including the retirement account claims. Pursuant to the 2012 stipulation, defendant was to pay $408,000 to plaintiff in exchange for her releasing him from claims regarding the marital residence and maintenance arrears, which she has done.

Plaintiff's claim to the retirement accounts is not barred by the 2012 stipulation or the release contemplated by that agreement. Indeed, the stipulation specifically recited the claims which it was settling, there is nothing in the stipulation indicating that plaintiff intended to waive her claim to the retirement accounts, and the agreement cannot be read to include waiver of a matter the parties did not desire or intend to dispose of (*Cahill v Regan*, 5 NY2d 292, 299 [1959]; *Morales v Solomon Mgt. Co., LLC*, 38 AD3d 381 [1st Dept 2007]).

Nor is her claim to the retirement accounts barred by the statute of limitations since a motion to enforce a right to a QDRO pursuant to a stipulation of settlement is not subject to a statute of limitation defense (*see Denaro v Denaro*, 84 AD3d 1148 [2d Dept 2011], *lv dismissed* 17 NY3d 921 [2011]; *Bayen v Bayen*, 81 AD3d 865, 866 [2d Dept 2011]).

Plaintiff's claim to the retirement accounts is not barred by laches as defendant is at least partially responsible for the delay in executing the QDROs and he has not shown any prejudice resulting from plaintiff's delay (*see Denaro*, 84 AD3d at 1149-

1150). Equitable estoppel is inapplicable here because plaintiff never made any false representation upon which defendant relied to his detriment (*see Melcher v Greenberg Traurig, LLP*, 102 AD3d 497 [1st Dept 2013]). Plaintiff's receipt of the $408,000 does not trigger the doctrine as it was received to satisfy her claims regarding maintenance arrears and equity in the home.

Supreme Court properly awarded plaintiff counsel fees pursuant to Domestic Relations Law § 237 (c) which directs the court to award fees "[i]n any action or proceeding for failure to obey any lawful order compelling payment of support or maintenance, or distributive award," upon a finding that such failure was willful. There is no question that plaintiff is entitled to her share in the retirement accounts pursuant to the judgment of divorce and that defendant willfully refused to cooperate with the execution of the QDROs.

There was no basis to award defendant counsel fees. 22 NYCRR 130-1.1 (a), upon which defendant relies, only permits an award of counsel fees based on frivolous conduct. Plaintiff did not engage in any frivolous conduct and was not required to waive her right to defendant's retirement accounts or to deliver the release prepared by defendant. Concur—Andrias, J.P., Sweeny, Acosta, Saxe and Clark, JJ.