*668 Beginning in 1994, Montefiore Medical Center (hereinafter Montefiore) and Wyckoff Heights Medical Center (hereinafter Wyckoff) entered into a series of agreements whereby Montefiore was to provide staff to Wyckoff s department of obstetrics and gynecology (hereinafter collectively the OB-GYN agreements). *669 Wyckoff defaulted on payments due to Montefiore pursuant to the OB-GYN agreements and, in 1997, Montefiore commenced an action against Wyckoff in the Supreme Court, Bronx County, seeking payment of that debt (hereinafter the Bronx County action). Montefiore agreed to discontinue that action in exchange for a payment of $400,000 and a release of any claims that Wyckoff might have against it.
In 2004, the plaintiffs — a mother, in her individual capacity and as administrator of the estate of her deceased son, and one of the mother’s surviving infant sons — commenced the present medical malpractice action against Wyckoff, among others. Wyckoff then commenced a third-party action against, among others, doctors Roger Duvivier, Thomasena Ellison, and Andrzej J. Riess (hereinafter collectively the doctors) and Montefiore, pursuant to which it sought contribution and indemnification with respect to the plaintiffs’ claims. Montefiore and the doctors separately moved to dismiss Wyckoffis third-party complaint insofar as asserted against each of them on the basis that the claims asserted therein were barred by the release given by Wyckoff to Montefiore. The doctors also moved to dismiss the third-party complaint insofar as asserted against Ellison and Riess on the basis that it failed to state a cause of action against them. The court rejected the contention of Montefiore and the doctors that Wyckoffis claims were barred by the release, but agreed that the third-party complaint failed to state a cause of action against Ellison and Riess. Wyckoff thereafter filed a second third-party complaint against Ellison and Riess, again asserting claims for contribution and indemnification.
Montefiore moved for leave to renew and reargue its motion on the basis that the Supreme Court had misinterpreted the release and relevant case law, and based on the holdings of two Court of Appeals cases decided two days prior to the date of the Supreme Court’s decision and order. The doctors moved for leave to reargue their motion to dismiss the third-party complaint insofar as asserted against Duvivier, and also moved to dismiss the second third-party complaint insofar as asserted against Ellison and Riess, as barred by both the release and the doctrines of res judicata and collateral estoppel. In an order dated February 6, 2012, the court, upon renewal and reargument, adhered to its prior determination with respect to the initial third-party complaint. The court also concluded that Wyckoffis second third-party complaint against Ellison and Riess was not barred by res judicata or collateral estoppel, and that the release did not bar the second third-party causes of action. Montefiore and the doctors separately appeal from so much *670 of the order dated February 6, 2012, as, upon renewal and reargument, adhered to the court’s prior determination declining to dismiss the third-party complaint insofar as asserted against Montefiore and Duvivier. The doctors also appeal from so much of the order dated February 6, 2012, as denied that branch of their motion which was to dismiss the second third-party complaint insofar as asserted against Ellison and Riess.
“A release is a contract, and its construction is governed by contract law” (Schiller v Guthrie, 102 AD3d 852, 853 [2013] [internal quotation marks omitted]; see Lee v Boro Realty, LLC, 39 AD3d 715, 716 [2007]). “A release will not be treated lightly, and will be set aside by a court only for duress, illegality, fraud, or mutual mistake” (Seff v Meltzer, Lippe, Goldstein & Schlissel, P.C., 55 AD3d 592, 593 [2008] [internal quotation marks omitted]; see Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d 269, 276 [2011]; Cahill v Regan, 5 NY2d 292, 299 [1959]; Bodisher v Hofmann, 50 AD3d 720 [2008]; Lee v Boro Realty, LLC, 39 AD3d at 716). As with contracts generally (see Greenfield v Philles Records, 98 NY2d 562, 569 [2002]), “[w]here a release is unambiguous, the intent of the parties must be ascertained from the plain language of the agreement” (Schiller v Guthrie, 102 AD3d at 853-854 [internal quotation marks omitted]; see Alvarez v Amicucci, 82 AD3d 687, 688 [2011]; A.A. Truck Renting Corp. v Navistar, Inc., 81 AD3d 674, 675 [2011]). Accordingly, “courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include” (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 277 [internal quotation marks omitted]; see Aivaliotis v Continental Broker-Dealer Corp., 30 AD3d 446, 447 [2006]) or “ ‘impos[e] [the court’s] own conception of what the parties should or might have undertaken, rather than confining itself to the implementation of a bargain to which’ the parties have committed themselves” (CNR Healthcare Network, Inc. v 86 Lefferts Corp., 59 AD3d 486, 489 [2009], quoting Joseph Martin, Jr., Delicatessen v Schumacher, 52 NY2d 105, 109 [1981]; see Stathakis v Poon, 295 AD2d 496, 497 [2002]).
In general, “a valid release constitutes a complete bar to an action on a claim which is the subject of the release” (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 276 [internal quotation marks omitted]). “If ‘the language of a release is clear and unambiguous, the signing of a release is a “jural act” binding on the parties’ ” (id., quoting Booth v 3669 Delaware, 92 NY2d 934, 935 [1998], quoting Mangini v McClurg, 24 NY2d 556, 563 [1969]). A valid general *671 release will apply not only to known claims, but “may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is ‘fairly and knowingly made’ ” (Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 276, quoting Mangini v McClurg, 24 NY2d at 566; see Alvarez v Amicucci, 82 AD3d at 688; A.A. Truck Renting Corp. v Navistar, Inc., 81 AD3d at 675). Nevertheless, “[t]he meaning and coverage of a general release depends on the controversy being settled and upon the purpose for which the release was actually given, and a general release may not be read to cover matters which the parties did not desire or intend to dispose of’ (Huma v Patel, 68 AD3d 821, 822 [2009] [internal quotation marks and citations omitted]; see Cahill v Regan, 5 NY2d at 299; Kaprall v WE: Women’s Entertainment, LLC, 74 AD3d 1151, 1152 [2010]).
The release given by Wyckoff to Montefiore recites that Wyckoff “hereby releases, acquits, and forever discharges Montefiore, and the past and present . . . employees ... of [Montefiore] from any and all actions, causes of action, suits, . . . claims, and demands whatsoever, in law, admiralty or equity, which, against [Montefiore], Wyckoff ever had, now has, can or may have, or claim to have, arising from or relating to the [OB-GYN agreements] entered into between [Montefiore] and Wyckoff . . . ; and the provision by [Montefiore] of services to Wyckoff . . . including without limitation all claims asserted in [the Bronx County action].” This unambiguously creates a general release of all claims relating to the OB-GYN agreements and the service provided thereunder. In any event, the context in which it was executed suggests that the release was a substantial part of the consideration given by Wyckoff to Montefiore in return for Montefiore’s discontinuance of the Bronx County action and was, therefore, intended as a broad release of all claims relating to the OB-GYN agreements that Wyckoff had or might one day have against Montefiore (see Johnson v Lebanese Am. Univ., 84 AD3d 427, 431 [2011]).
Furthermore, there is no evidence that the agreement was not fairly and knowingly made or that the parties intended it to cover a narrower range of claims than its plain language suggests (see Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 276). Thus, neither the fact that the release predated both the commencement of this action and the interposition of Wyckoff s third-party claims for contribution and indemnification, nor Wyckoff s unsubstantiated claim that it did not intend such an expansive meaning, precludes application of the plain language of the release to bar Wyckoff s third- *672 party claims for contribution and indemnification (see id. at 276; Lipiner v Santoli, 60 AD3d 1001, 1002-1003 [2009]; McNally v Corwin, 30 AD3d 482, 485 [2006]). Accordingly, the Supreme Court, upon renewal and reargument, should have granted Montefiore’s and the doctors’ motions to dismiss Wyckoff’s third-party complaint insofar as asserted against Montefiore and Duvivier, respectively, and should have granted the doctors’ separate motion to dismiss Wyckoff’s second third-party complaint insofar as asserted against Ellison and Riess.
In light of the foregoing, we need not reach the parties’ remaining contention. Eng, P.J., Dickerson, Sgroi and Miller, JJ., concur.