■ JOHN DE LANDE LONG, Appellant, v PATRICK G. O'NEILL et al., Respondents. [5 NYS3d 42]—

Orders, Supreme Court, New York County (Manuel J. Mendez, J.), entered on or about January 9, 2013, which granted defendants' motions to dismiss the complaint pursuant to CPLR 3211 (a) (1), unanimously affirmed, without costs.

Defendants Patrick O'Neill and Fred Knoll were the sole members of KOM Capital Management LLC (KOM). Around December 2005, defendants became directors of a Cayman Islands investment fund, CMIA China Fund II Ltd. (the Fund). Defendants were responsible for preparing the Fund's operating documents, including the provisions containing the circumstances for discharging the manager that the Fund would appoint. At about the same time, the Fund appointed CMIA Capital Partners, PTE (CMIA Capital) as its investment manager and KOM as its investment subadvisor. As subadvisor, KOM was entitled to certain fees based on the Fund's profitability. Plaintiff is the principal of a financial planning

firm; in exchange for procuring investors for the Fund, that firm was entitled to a portion of the performance fees that the Fund paid to KOM.

In July 2007, plaintiff became a director of the Fund, serving along with defendants and three other people. When the Fund's directors decided that circumstances warranted terminating CMIA Capital as the Fund's investment manager, they discovered that under the operating documents, they lacked direct express authority to do so, regardless of CMIA Capital's performance.

According to the parties, CMIA Capital breached its fiduciary duties, thereby depriving the Fund of somewhere between $50 million and $100 million. Thus, in May 2009, the Fund commenced an action in Singapore to remove CMIA Capital for its alleged misconduct. CMIA Capital asserted counterclaims in the Singapore action and also commenced a derivative action in New York, alleging that the Fund's directors had breached their fiduciary duties and committed corporate waste by commencing the Singapore action. On November 22, 2010, Supreme Court (Shirley Werner Kornreich, J.) granted the directors' motion to dismiss the derivative action for lack of standing.

Plaintiff alleges that in recognition of his efforts in connection with the lawsuit against CMIA Capital, defendants entered into an oral agreement to ensure that "plaintiff would be fairly compensated" for his efforts; the parties allegedly reaffirmed this oral agreement at various times during the lawsuits. Plaintiff also alleges that at some later date, the parties modified their agreement to provide that plaintiff would receive one-third of the performance fee that KOM received.

In June 2011, the parties reached an agreement to settle all their disputes. Accordingly, plaintiff, defendants, KOM, and CMIA Capital entered into a settlement agreement, along with certain nonparties to this appeal. The recitals in the settlement agreement stated that disputes had arisen among the parties "relating to the management of the Fund and its investments" and that the settlement agreement was to resolve the disputes, including all claims brought in the lawsuits.

In addition to discontinuing the lawsuits, terminating CMIA Capital, and requiring certain payments among the parties, the settlement agreement provided for the liquidation of the Fund and the distribution of its assets. The parties agreed that upon the Fund's liquidation, KOM was to receive a $1,155,903.21 performance fee. Ultimately, a company wholly owned by defendant O'Neill received this fee; that company ap-

parently transferred defendant Knoll's share to a company under Knoll's control.

The settlement agreement contained a release, which provided that the agreement was made in "full and final settlement of *all matters arising out of or in connection with* the facts, matters, claims, actions and allegations" made in the lawsuits (emphasis added). Further, the release provided that each party released "each other Party" from: *"all and/or any* actions, claims, rights, demands, suits, charges, complaints, obligations, damages, costs (including attorney's fees and costs actually incurred), expenses, liabilities, losses, debts, set-offs, promises, contracts, agreements and controversies of any nature whatsoever . . . *whether known or not now known . . . arising from or resulting from or in connection with* any act or omission, event, transaction, occurrence, agreement, contract or relationship *concerning* [the Fund], its investments, business or affairs (*including without limitation* the matters alleged in the [lawsuits])" (emphases added).

Plaintiff then commenced this action, asserting that he had played a significant role in resolution of the suit against CMIA Capital, and thus was entitled, under his oral agreement with O'Neill and Knoll, to $385,301—one third of the $1,155,903 settlement fee that CMIA had paid to KOM. In the complaint, plaintiff interposed causes of action for breach of contract, fraudulent inducement, unjust enrichment, and promissory estoppel.

Defendants moved separately to dismiss the complaint, contending, among other things, that the release barred plaintiff's claim for payment. In opposition, plaintiff asserted that because the settlement agreement was between two groups (the Fund, its directors, and KOM on one side, and CMIA Capital and its principal on the other), the settlement agreement did not contemplate releasing claims between parties on the same side, such as between him and defendants. Plaintiff further asserted that the release could not bar his claim because that claim had not yet ripened at the time of the settlement, and releases could only bar claims that were asserted or that could have been asserted at the time of the release.

The IAS court granted both defendants' motions to dismiss under CPLR 3211 (a) (1). In so doing, the court observed that the meaning and coverage of a release "necessarily depends, as in the case of contracts generally, upon the controversy being settled and upon the purpose for which the release was actually given *Cahill v. Regan*, 5 N.Y. 2d 292, 184 N.Y.S. 2d 348

(1959)," and held that the release barred plaintiff's claim (2013 NY Slip Op 33854[U], *3 [Sup Ct, NY County 2013]). The court found that, although the recital in the settlement agreement stated that it was executed between two opposing sides, it defined "party" to include plaintiff and defendants; thus, the release made clear that it was meant to apply to more than the settlement of the lawsuits involving CMIA Capital. According to the court, the settlement agreement's inclusion of extensive lists of the entities who the release covered, as well as the broad sweeping language of the release, indicated that the parties "intended to leave no loose ends" regarding the Fund's affairs (*id.*). Moreover, the court stated, the settlement agreement included detailed instructions for liquidation of the Fund and the disposition of its assets; therefore, had the parties intended to compensate plaintiff for his efforts in negotiating the liquidation, they should have so stated.

We now affirm. Plaintiff fairly and knowingly signed the release, and its terms now bind him. Indeed, plaintiff himself states that he played a significant role in helping all the parties come to terms to resolve disputes and enter into the settlement agreement; he cannot now be heard to say that he did not intend to release what the contract language says he is releasing.

Despite plaintiff's contention otherwise, there is no ambiguity as to the release's intended scope. The language in the release contains several phrases indicating its exceptional breadth—for example, the language stated that the agreement was made in full settlement "of all matters arising out of or in connection with the facts, matters, claims, actions and allegations" made in the lawsuits. This language is not "reasonably susceptible of more than one interpretation" (*Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]; *see also Telerep, LLC v U.S. Intl. Media, LLC*, 74 AD3d 401, 402 [1st Dept 2010]). This conclusion holds particularly true given that the settlement agreement provided for liquidation of the Fund and winding up of its business, and thus, the end of the business relationships regarding the Fund. Accordingly, the language of the release makes clear that when the Fund ended as an entity, so did any of the claims or rights relating to it.

Moreover, even accepting as true (as we must on a motion to dismiss) plaintiff's argument that he believed his claims did not exist when he executed the settlement agreement, this argument would not change the outcome, as the release disposed of even unripe and contingent claims. According to the language of the agreement, the release broadly barred "all

and/or any" claims "arising from or resulting from or in connection with" any act [etc.] concerning [the Fund]." This Court has actually construed similar broad language to bar fraud claims relating to the subject matter where the signatories to the agreement did not specifically refer to, or even know about, those fraud claims before executing their release (*see Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.*, 76 AD3d 310, 318-319 [1st Dept 2010], *affd* 17 NY3d 269, 276 [2011]). Similarly, courts have given effect to releases even when the releasors are subjectively unaware of the precise claims they are releasing (*see Mergler v Crystal Props. Assoc.*, 179 AD2d 177, 180 [1st Dept 1992]).

Plaintiff is no more persuasive with his argument that the settlement agreement did not contemplate releasing claims between parties on the same side, such as between him and defendants. The settlement agreement established defined terms for each group of adverse parties—for example, the Fund, KOM, defendants, plaintiff, and one nonparty to this appeal are defined collectively as the "CCF2 parties" while yet another group of signatories to the settlement agreement is referred to collectively as the "CMIA Parties." Nonetheless, the language in the release simply states that "each Party . . . irrevocably and fully releases and forever discharges each other Party." Had the parties wanted to release only specific individuals or entities, the agreement provided the language by which the parties could have done so. Thus, the release here at issue makes clear that each individual party released each other individual party regardless of the position in which those parties stood at the time they signed the release.

In light of our holding, we need not reach plaintiff's remaining arguments. Concur—Mazzarelli, J.P., Sweeny, Moskowitz, Richter and Feinman, JJ.