NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 27 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In re WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION

--------------------------------------------------------

REORGANIZED FLI, INC.,

　　　　　Plaintiff - Appellant,

　v.

ONEOK, INC., et al.,

　　　　　Defendants-Appellees.

No.　16-17279

D.C. No. 2:03-cv-01431

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Senior District Judge, Presiding

Argued and Submitted February 16, 2018
San Francisco, CA

Before: BEA and N.R. SMITH, Circuit Judges, and LASNIK,[**] District Judge.

---

[*]　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]　The Honorable Robert S. Lasnik, Senior District Judge for the Western District of Washington, sitting by designation.

Appellant Reorganized FLI, Inc. ("RFLI") appeals from the district court's grant of summary judgment to Defendants on the basis of release. We review the grant of summary judgment de novo, *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986), and reverse.

RFLI alleged that Defendants violated the Kansas Restraint of Trade Act, Kan. Stat. Ann. §§ 50-101 to 164, by manipulating the price of natural gas and that its predecessor-in-interest, Farmland,[1] was injured in paying inflated prices on contracts for "physical" natural gas. Defendants moved for summary judgment on the ground that these claims were barred by settlement releases in a prior class action, *In re Natural Gas Commodity Litigation*, No. 03-CV-06186-VM (S.D.N.Y. 2003) (the "NYMEX Action"). In the NYMEX Action, the class alleged the same manipulative conduct by Defendants, but the NYMEX class alleged they were injured in paying inflated prices on natural gas futures contracts (as opposed to retail purchases of physical natural gas). The releases entered in the NYMEX Action (the "NYMEX Releases") purported to release any and all claims relating in any way to the class's NYMEX trading or any conduct alleged in the class complaint. The district court below found that the NYMEX Releases barred

---

[1] RFLI is the successor-in-interest to J.P. Morgan, which was in turn the successor-in-interest, as bankruptcy trustee, to Farmland.

RFLI's present claims, and therefore granted summary judgment to Defendants on their affirmative defense of release.

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact *and* the moving party is entitled to judgment as a matter of law." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1184 (9th Cir. 2016) (emphasis added); *Chapman v. Rudd Paint & Varnish Co.*, 409 F.2d 635, 639 (9th Cir. 1969) ("[S]ummary judgment is not to be granted merely because there are no [genuine and material] issues of fact. It must also appear that, on the undisputed facts, the person making the motion 'is entitled to a judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56(c))). On appeal, RFLI argues that the district court erred in granting summary judgment because Defendants were not "entitled to judgment as a matter of law" on their affirmative defense of release.[2] Specifically, RFLI argues the district court erred in: (1) interpreting the NYMEX Releases to release absent class members' claims based on purchases of physical natural gas, (2) enforcing the NYMEX Releases against

---

[2] Here, there are no facts in dispute. The interpretation of a release—a form of contract—is a pure legal matter.

RFLI in violation of the "identical factual predicate" rule,[3] and (3) enforcing the Releases in violation of RFLI's due process rights as an absent class member.

1. The NYMEX Releases are governed by New York state contract law. *See Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1460 (9th Cir. 1986) (applying New York law to determine the scope of a release in a settlement agreement entered into in New York). Under New York law, "the scope of a release generally depends on 'the controversy being settled, and the purpose for which the release is actually given,'" *Mardan Corp.*, 804 F.2d at 1461 (quoting *Cahill v. Regan*, 157 N.E.2d 505, 510 (N.Y. 1959)), but "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002); *see also Mardan Corp.*, 804 F.2d at 1461 (rejecting the appellant's contextual argument under New York law because its position was "belied by the very terms of [the settlement and release]").

The NYMEX Releases explicitly provide that the class of "claims relating in any way to trading in NYMEX Natural Gas Contracts" "include[s]"—at least— claims that:

---

[3] "[A] federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (original alteration omitted) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)).

(a) . . . relate in any way to any conduct complained of in any complaint filed in the [NYMEX] Action, (b) have been asserted or could have been asserted in any state or federal court or any other judicial or arbitral forum against the Released Parties . . . , (c) arise under or relate to any . . . state antitrust laws . . . . , and/or (d) [were] brought in this Action.

The instant claims both "relate to conduct complained of . . . in the NYMEX Action" (*i.e.*, manipulative trading practices such as "wash" trading and "churning") and "relate to . . . state antitrust laws" (*i.e.*, the Kansas Restraint of Trade Act). Furthermore, the NYMEX Releases define "trading in NYMEX Natural Gas Contracts" to include "purchasing . . . NYMEX Natural Gas Contract[s] . . . as a hedger." As Defendants argue, many of Farmland's physical gas purchases thus "relate[d] . . . to trading in NYMEX Natural Gas Contracts" insofar as Farmland hedged those physical gas purchases by purchasing corresponding NYMEX futures contracts to protect against the risk of increases in the cost of its physical gas purchases. Therefore, the language of the NYMEX Releases is broad enough to encompass RFLI's instant claims.

2. The NYMEX Releases are nonetheless not enforceable against RFLI under the so-called "identical factual predicate" rule: "A settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse v. Sprint Corp.*, 598 F.3d

5                                                                16-17279

581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008); *Class Plaintiffs*, 955 F.2d at 1287). Therefore, although the parties "may have drafted the settlement agreement to include as broad a release as possible," the NYMEX Releases are "*enforceable* [only] as to subsequent claims . . . depending upon the same set of facts." *Williams*, 517 F.3d at 1134 (emphasis in original and internal quotation omitted).

The complaints in both actions allege that Defendants inflated the price of natural gas by manipulative trading practices. But even if those elements of the factual predicates of each claim are identical, the question whether Farmland (and thus RFLI) was injured by Defendants—as well as the follow-on questions of when, and where, and how—are also part of the factual predicate of RFLI's claims made here. *Hesse*, 598 F.3d at 589 (holding earlier settlement release was not enforceable to bar later claims "brought to remedy a different set of injuries"); *accord Reyn's Pasta Bella*, 442 F.3d at 749 (finding the identical factual predicate rule was satisfied because "the price-fixing predicate . . . *and the underlying injury* [we]re identical" (emphasis added)). RFLI's claims here therefore do not depend on only a different cause of action (the Kansas Restraint of Trade Act), they also depend on proof of different facts to establish a different injury: The terms of Farmland's physical gas contracts, the effect of Defendants' alleged misconduct on the performance and prices of the physical contracts, and the measure of

6                                                                    16-17279

Farmland's losses on the physical contracts due to Defendants' alleged misconduct, are all facts which RFLI must prove in this action and which would have been unnecessary in the NYMEX Action.

At oral argument, Defendants argued that the identical factual predicate rule was not violated because any injury Farmland suffered on its physical contracts was offset by its hedging through NYMEX contracts.[4]  However, the testimony upon which Defendants rely indicates that Farmland's hedging did not always offset its losses on its physical purchases "to the penny."  In support of their motion for summary judgment below, Defendants submitted the testimony of Farmland's Rule 30(b)(6) deponent, who stated, "*We were never able to completely hedge our operation*, but we could hedge *some* of our gas costs."  Nor was Farmland's hedging done exclusively through NYMEX contracts during the relevant time period.  Moreover, whether the NYMEX claims and the instant claims share an "identical factual predicate" is a purely legal question; we need not

---

[4] The Defendants' Answering Brief raised the hedging argument to argue that the NYMEX Releases were broad enough to encompass RFLI's instant claims.  For the reasons stated above, we agree that the NYMEX Releases are so broad.  However, Defendants did not argue in their Answering Brief that RFLI's hedging practices are relevant to this court's "identical factual predicate" inquiry.  Therefore, Defendants waived any such argument. *See Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083, 1100 (9th Cir. 2017).  Furthermore, for the reasons stated below, we conclude that RFLI's hedging practices did not and could not render the respective factual predicates of the NYMEX action and the instant action identical, as required under this court's precedents.

look beyond the complaints in each action to determine that they do not.[5]

Therefore, Defendants were not "entitled to judgment as a matter of law" on their affirmative defense of release, and the district court erred in granting Defendants' motion for summary judgment.

3. In light of our conclusion that enforcing the NYMEX Releases to bar RFLI's instant claims violated the "identical factual predicate" rule, we do not reach RFLI's remaining claims.

**REVERSED and REMANDED.**

---

[5] Farmland's hedging (based on NYMEX or other futures contracts) could require the district court to reduce any eventual recovery by RFLI to account for offsetting gains Farmland realized on its futures contracts. But that is a separate inquiry from the "identical factual predicate" inquiry required under our circuit law to make the NYMEX Releases enforceable here. We do not reach that separate inquiry as to the extent of damages, if any, in this decision.

16-17279