■ ELECTRONIC BANKCARD SYSTEMS, INC., et al., Respondents, v FRANK SHINER, Appellant. [759 NYS2d 153] —In an action to recover damages for breach of contract, the defendant appeals from an order of the Supreme Court, Westchester County (Rudolph, J.), dated March 26, 2002, which denied his motion for summary judgment dismissing the complaint.

Ordered that the order is reversed, on the law, with costs, the motion is granted, and the complaint is dismissed.

The plaintiff Glenn Francis is in the business of enabling merchants to accept credit card payments. He originally conducted his business as two unincorporated entities, the plaintiffs Retriever and Electronic Bankcard Systems. The plaintiff Electronic Bankcard Systems, Inc., is the successor to these unincorporated entities (hereinafter collectively EBS). Francis is the president of Electronic Bankcard Systems, Inc. On January 16, 1992, EBS entered into a contract, denominated as an employees finders agreement, with Retriever Industries, Inc., doing business as Retriever Payment Systems. That contract, inter alia, notes that Retriever Sales, Inc., is the subsidiary of Retriever Industries, Inc., doing business as Retriever Payment Systems (hereinafter collectively RPS). On February 19, 1993, the defendant entered into an employment agreement with Retriever Sales, Inc.

Francis stated in an affidavit that on May 14, 1994, the defendant entered into an agreement (hereinafter the noncompete agreement) with him, in effect, to split commissions from the credit card payments. That agreement included, inter alia,

a limited noncompetition clause which was to survive the termination of the noncompete agreement.

Apparently, disagreements arose among Francis, the defendant, and RPS. It is undisputed that on June 14, 1995, Francis, the defendant, and RPS signed a "MODIFICATION HOLD HARMLESS AND INDEMNIFICATION AGREEMENT" (hereinafter the release agreement). It included the following two paragraphs:

"Upon the receipt of the funds specified by Paragraphs 1 and 2, *Francis agrees to acquit, relieve and discharge Shiner and RPS, their affiliates, successors and assigns from any and all liability, of whatever nature, whether in contract or other* which may now or hereinafter be owing to Francis for commission, application and miscellaneous fees, and by executing this agreement relieves Shiner, RPS, their successors and assigns from any and all claims, causes of action, or liability which may be payable by them and *accepts such sum as full and complete satisfaction of all such amounts owing as of the date of this Agreement, and terminates all his rights with Shiner, RPS, their successors and assigns in any and all contracts or agreements, to which Shiner, RPS, their successors or assigns are a party*. This paragraph specifically does not modify any residual payments to be paid by RPS to Glenn Francis in accordance with existing agreements between the Parties."

"Shiner agrees to acquit, relieve and discharge Francis and RPS, their affiliates, successors and assigns from any and all liability, of whatever nature, whether in contract or other which may now or hereinafter be owing to Shiner for commission, application and miscellaneous fees, and by executing this agreement relieves Francis, RPS, their successors and assigns from any and all claims, causes of action, or liability which may be payable by them and accepts such sum as full and complete satisfaction of all such amounts owing as of the date of this Agreement, and terminates all his rights with them and accepts such sum as full and complete satisfaction of all such amounts owing as of the date of this Agreement, and terminates all his rights with Francis, RPS, their successors and assigns in any and all contracts or agreements, to which Francis, RPS, their successors or assigns are a party. This paragraph specifically does not modify any residual payments to be paid by RPS to Frank Shiner in accordance with existing agreements between the Parties" (emphasis added).

The plaintiffs subsequently commenced this action to enforce the noncompetition clause in the noncompete agreement. In his answer, the defendant asserted, inter alia, that the action was barred by the release agreement.

Thereafter, the defendant moved for summary judgment arguing both that he never entered into the noncompete agreement and that even if he did it was abrogated by the release agreement. The plaintiffs opposed the motion on the grounds that the release did not apply to the noncompete agreement and that the defendant had entered into the noncompete agreement. The Supreme Court denied the motion, finding the existence of factual questions.

On this appeal, the defendant does not challenge the existence of a factual question as to whether the noncompete agreement was extant. He contends however, that even if it was extant, the noncompete agreement was totally abrogated by the release agreement. We agree.

Contrary to the plaintiffs' contentions, the aforementioned language of the release agreement is clear and unambiguous, and the plain meaning of this custom-drafted release agreement should be effectuated (*see Wells v Shearson Lehman/Am. Express,* 72 NY2d 11 [1988]). It clearly covers and terminates all claims, contracts, and agreements between, among others, Francis and the defendant with respect to the electronic and/or credit card payments business including the noncompete agreement (*see Matter of Transtate Ins. Co.,* 297 AD2d 684 [2002]; *cf. B.B. & S. Treated Lbr. Co. v Groundwater Tech.,* 256 AD2d 430 [1998]).

There is also no basis, as the plaintiffs contend, to limit the release agreement only to contracts in which Francis, the defendant, and RPS are all parties. The language in the release agreement does not suggest that it should be so limited, and there is no need to resort to external proof to determine its intent (*cf. Kass v Kass* 91 NY2d 554 [1998]; *Matter of Transtate Ins. Co., supra*).

The plaintiffs' remaining contentions are without merit. Florio, J.P., S. Miller, Goldstein and Adams, JJ., concur.