San Miguel v QB & Son LLC (2025 NY Slip Op 51569(U))

[*1]

San Miguel v QB & Son LLC

2025 NY Slip Op 51569(U)

Decided on October 6, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 6, 2025

Supreme Court, Kings County

Luis A. San Miguel, Plaintiff,

against

QB & Son LLC, Defendants.

Index No. 502785/2018

Subin Associates, LLP, New York City (Shibu Jacob of counsel), for plaintiff.

Ozen O'Connor, New York City (Michael A. DeRosa of counsel), for defendant.

Aaron D. Maslow, J.

The following papers were used on this motion:

Defendant's Notion of Motion & Supporting Papers
NYSCEF Document Nos. 127-144

Plaintiff's Opposition to Motion
NYSCEF Document Nos. 148-149

Defendant's Reply Papers
NYSCEF Document Nos. 151-152

Filed by Court/Other
NYSCEF Document Nos. 146-147, 150

Upon the foregoing papers, having heard oral argument [FN1]
, and due deliberation having been had, the within motion is determined as follows.

Background

In this action for personal injuries, plaintiff alleged that he tripped and fell due to a defective condition on the steps at 952A Greene Avenue, in Brooklyn, New York, a multi-apartment building, said property being owned by Defendant. The date of the incident has been set forth by Plaintiff as both December 20, 2017 and December 30, 2017; the former date is contained in Plaintiff's affidavit, and the latter in the complaint. Plaintiff, who resided in the building, claims not to have paid rent in recent years since he was the resident superintendent Plaintiff claims further that Defendant commenced paying the tenants of the building to move out.

Defendant moves for summary judgment dismissing this action based on two releases executed by Plaintiff, the initial one being dated April 25, 2018, and a subsequent one being dated August 4, 2018. The releases are the basis for Defendant's first affirmative defense in its answer.[FN2]
Plaintiff maintains that the releases were the products of coercion and were not fairly and knowingly entered into, if they can even be considered by the Court.

Plaintiff himself averred that the releases were entered into in the course of surrendering his apartment and "no one told me that signing this document also meant that I was relieving the landlord from any liability for the injuries I sustained" (NYSCEF Doc No. 149 ¶ 21). Plaintiff's counsel argues: "Certainly, the plaintiff has consistently reiterated that he was never advised or made aware that the 'releases' would include the claims asserted against the defendant in his previously file lawsuit related to a slip and fall on snow / ice. (Def. Ex. B). This is supported by the fact that the 'releases' do not contain any information about this case, such the index number, caption, parties' names, case name, location of the accident, date of accident, or any other associated information. Still further, the 'releases' are void of any words that would relate to the plaintiff's claims in this action, such as 'personal injury,' 'lawsuit, 'slip,' 'fall,' 'ice,' 'snow, or 'injury,' just to name a few examples." (NYSCEF Doc No. 148 ¶ 22.)

Defendant maintains that although it was not aware that Plaintiff had commenced the instant lawsuit in 2017 — in fact another Justice had vacated a default order — Plaintiff was aware of it and had retained an attorney. As such, Plaintiff's claims of mutual mistake, duress, misrepresentation, and fraud regarding the releases are devoid of merit.

Releases

The text of the releases is crucial to a determination of this motion. Hence the Court includes both of them in this decision and order. The April 25, 2018 release is as follows:

SURRENDER AGREEMENT

 

An agreement to end a lease before the termination date in the original lease
agreement.

[*2]Date of this Agreement

April 25, 2018

Information from

Landlord QB & SON LLC

Original Lease

Tenant Luis, Alberto Sanmiguel - Occupant

Date of Lease

None

Description of leased premises

Room 5

at 952A Greene Avenue

Brooklyn, New York 11221

Payment for Surrender

Landlord gives and Tenant accepts $5,000.00 as payment for the surrender of the lease.

Surrender

Tenant gives possession of the leased premises and the keys to the Landlord. The Landlord accepts the keys and Tenant deliver possession of the leased premises on or about July 16, 2018 in broom cleans condition and free of occupants. Any items left behind after the said date shall deem abandoned and landlord has right to dispose.

Tenant's Statement

Tenant has done nothing which would give anyone a claim against the leased premises.

Releases

Luis, Alberto Sanmiguel is the occupant of the said premises and has full authority to enter this agreement and turn over possession of said premises to the landlord herein. Luis, Alberto Sanmiguel releases Landlord from any claims or causes of action Tenant may have against Landlord. Landlord shall deem the same.

If there is more than one landlord or tenant the words "Landlord" and "Tenant" used in this agreement shall include them.

Signature

Tenant /s/

Luis, Alberto Sanmiguel - Occupant

If a corporation by Andre R. Munoz its officer of the Corporation

Landlord: QB & SON LLC

By: /s/

Quang Tran, a member of the Company.

(NYSCEF Doc No. 130.)

The August 4, 2018 release is similar in form and purportedly was entered into in order to facilitate partial payments to Plaintiff, per the claim of Quang Tran, a member of the landlord-property owner LLC:

SURRENDER AGREEMENT

 

An agreement to end a lease before the termination date in the original lease agreement.

Date of this Agreement

Aug 4 / 2018

Information from

Landlord QB & SON LLC

Original Lease

Tenant Luis, Alberto Sanmiguel - Occupant

Date of Lease

None

Description of leased premises

Room 5

at 952A Greene Avenue

Brooklyn, New York 11221

Payment for Surrender

Landlord gives and Tenant accepts $3,000.00 as payment for the surrender of the lease.

Surrender

Tenant gives possession of the leased premises and the keys to the Landlord. The Landlord accepts the keys and Tenant deliver possession of the leased premises on or about Aug 15 / 2018 in broom cleans condition and free of occupants. Any items left behind after the said date shall deem abandoned and landlord has right to dispose.

Tenant's Statement

Tenant has done nothing which would give anyone a claim against the leased premises.

[*3]Releases

Luis, Alberto Sanmiguel is the occupant of the said premises and has full authority to enter this agreement and turn over possession of said premises to the landlord herein. Luis, Alberto Sanmiguel releases Landlord from any claims or causes of action Tenant may have against Landlord. Landlord shall deem the same.

If there is more than one landlord or tenant the words "Landlord" and "Tenant" used in this agreement shall include them.

Signature

Tenant /s/

Luis, Alberto Sanmiguel - Occupant

If a corporation by its officer of the Corporation
Landlord: QB & SON LLC

By: /s/

Quang Tran - a member of the Company.

(NYSCEF Doc No. 131.)

Discussion

Generally, a valid release constitutes a complete bar to an action on a claim that is the subject of the release (see Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d 269, 276 [2011]; Global Mins. & Metals Corp. v Holme, 35 AD3d 93, 98 [2006]). " 'A party may move for judgment dismissing one or more causes of action asserted against him [or her] on the ground that . . . the cause of action may not be maintained because of . . . [a] release' " (Cames v Craig, 181 AD3d 851, 851 [2d Dept 2020]).

Because a release is a contract, "its construction is governed by contract law" (id. [internal quotation marks omitted]; see Davis v Rochdale Vil., Inc., 109 AD3d 867, 867 [2d Dept 2013]). "Whether the language set forth in a release unambiguously bars a particular claim is a question of law appropriately determined on a motion [to dismiss] based upon the entire release and without reference to extrinsic evidence" (Beys Specialty, Inc. v Euro Constr. Servs., Inc., 125 AD3d 911, 912 [2015] [internal quotation marks omitted]; see O'Hara v Magee, 212 AD3d 833, 834 [2023]).

Where a release contains clear and unambiguous language, the signing of it is "a jural act binding on the parties" (Booth v 3669 Delaware, 92 NY2d 934, 935 [1998] [internal quotation marks omitted]; see Prete v Tamares Dev. 1, LLC, 219 AD3d 1537, 1537 [2d Dept 2023]; Mangini v McClurg, 24 NY2d 556, 563 [1969]; Electronic Bankcard Sys. v Shiner, 305 AD2d 366, 368 [2003]).

The " 'meaning and coverage of a general release depends . . . upon the purpose for which the release was actually given,' and a general release may not be read to cover matters which the parties did not desire or intend to dispose of" (Huma v Patel, 68 AD3d 821, 822 [2d Dept 2009] [citations omitted], quoting Lefrak SBN Assoc. v Kennedy Galleries, 203 AD2d 256, 257 [2d Dept 1994]; see Kaprall v WE: Women's Entertainment, LLC, 74 AD3d 1151, 1152 [2d Dept 2010]; Zichron Acheinu Levy, Inc. v Ilowitz, 31 AD3d 756 [2d Dept 2006]).

"The meaning and scope of a release must be determined within the context of the controversy being settled" (Matter of Schaefer, 18 NY2d 314, 317 [1966]; see Cahill v Regan, 5 NY2d 292, 299 [1959]; Burnside 711 LLC v Amerada Hess Corp., 109 AD3d 860, 861 [2d Dept 2013]). "In order to be entitled to dismissal of an action based upon a release, the movant must show that the release was intended to cover the subject action or claim" (Choudhry v Five Star Contr. Cos., Inc., 52 AD3d 763, 764 [2008]; see Friends of Avalon Preparatory School v Ehrenfeld, 6 AD3d 658 [2004]).

While a release may encompass unknown claims, it must be clear that the parties so intended by the use of broad, all-encompassing language (see Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 276-277; Matter of Travelers Home & Mar. Ins. Co. v Fiumara, 164 AD3d 592, 593 [2d Dept 2018]). However, a release may not be read to cover matters which the parties did not intend to cover (see Nucci v Nucci, 118 AD3d 762 [2d Dept 2014]; Cahill v Regan, 5 NY2d at 299; Chiappone v North Shore Univ. Hosp., 164 AD3d 463, 465 [2d Dept 2018]; Clerico v Pollack, 148 AD3d 769, 771 [2d Dept 2017]; Wechsler v Diamond Sugar Co., Inc., 29 AD3d 681, 682 [2d Dept 2006]; Stone v Aronwald & Pykett, 275 AD2d 706, 707 [2d Dept 2000]). If the recitals in the release appear to limit the release to only certain claims, demands, or obligations, the release will operate only as to those matters (see Rotondi v Drewes, 31 AD3d 734, 735 [2d Dept 2006]; Kaminsky v Gamache, 298 AD2d 361, 361 [2002]).

A releasor's awareness of an incident giving rise to an action is insufficient in and of itself to establish that the release was intended to cover claims asserted in that action which were totally unrelated to the actual purpose for executing the release (see Chiappone v North Shore Univ. Hosp., 164 AD3d at 465 [2d Dept 2018];

Based merely on their contents, it is clear that the releases in the case at bar were executed as an integral component over a dispute regarding Plaintiff's occupancy of an apartment in Defendant's building. The parties are repeatedly referred to as Landlord and Tenant. Defendant was paying Plaintiff money for surrender of the lease for Room 5. Plaintiff yielded possession of it and was returning the keys to Defendant, with the premises being in broom clear condition and free of occupants. Abandoned items in the unit would be disposed of. The one sentence in the multi-provision releases, "Luis, Alberto Sanmiguel releases Landlord from any claims or causes of action Tenant may have against Landlord," followed a sentence stating that Plaintiff was the occupant of the premises and possessed "full authority to enter this agreement and turn over possession of said premises to the landlord herein."

Defendant concedes in its papers that it did not even have knowledge of the instant action at the time the releases were executed. The releases lack mention of Plaintiff's claim for tripping and falling on the steps. The meaning and coverage of the instant releases are clear — to close out the landlord-tenant relationship between the parties. Once the apartment was surrendered and the keys turned over, Plaintiff would have no claims with respect to his Room 5. (See Huma v Patel, 68 AD3d at 822.) There is no broad, all-encompassing language in the one sentence [*4]referring to a release of claims, for example language referring to a period of time, "all matters," or "all claims." In fact, that sentence refers to claims "Tenant" has against "Landlord." Tripping on steps is not an occurrence limited to a tenant. (See Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V., 17 NY3d at 276-277.)

Movant Defendant has not shown that the release was intended to cover the subject action in which a claim for personal injuries is maintained (see Nucci v Nucci, 118 AD3d 762; Cahill v Regan, 5 NY2d at 299; Chiappone v North Shore Univ. Hosp., 164 AD3d at 465 [2d Dept 2018]; Clerico v Pollack, 148 AD3d at 771 [2d Dept 2017]; Rotondi v Drewes, 31 AD3d at 735 [2006]; Kaminsky v Gamache, 298 AD2d at 361). That Plaintiff was aware of the pendency of this action is irrelevant (see Chiappone v North Shore Univ. Hosp., 164 AD3d at 465).

The Second Department has rejected motions seeking a complaint's dismissal where the defendant asserts the applicability of a release entered into in the course of closing out a distinctly separate dispute (e.g. Patos v Long Is. Living Ctr., LLC, 208 AD3d675 [2d Dept 2022] [employer failed to establish that release executed by employee settling personal injury action covered separate unpaid wages claim]; Chiappone v North Shore Univ. Hosp., 164 AD3d 463 [hospital failed to establish that release signed by parties settling prior action arising from procedure was intended to bar recovery for claims arising from patient's second admission and death]; Mazzurco v PII Sam, LLC, 153 AD3d 1341 [2d Dept 2017] [mortgage lender not entitled to dismissal of mortgagors' action alleging claims of unjust enrichment and breach of contract resulting from alleged overpayment on mortgage loan, based on release executed by mortgagors in foreclosure action for different property]; Desiderio v Geico Gen. Ins. Co., 107 AD3d 662 [2d Dept 2013] [insurer not entitled to dismissal of action alleging breach of contract for failing to investigate, bargain for, and settle SUM insurance claim based on release following arbitration award of SUM compensation]).

Here, not only has Defendant failed to establish that as a matter of law the releases covered the instant personal injury action, the record evidence proved that they were limited to the matter of Plaintiff surrendering possession of Room 5 at 952A Greene Avenue, in Brooklyn, New York, owned by Defendant. Not only is Defendant not entitled to summary judgment dismissing the complaint but, upon searching the record, Plaintiff is entitled to summary judgment to the effect that the Court determines that the subject releases do not cover the instant trip-and-fall claim against Defendant (see CPLR 3212 [b]; Salewski v Music, 150 AD3d 1353 [3d Dept 2017] [release in personal injury action not bar to maintenance of claims for contribution and indemnification]); International Asbestos Removal v Beys Specialty, Inc., 135 AD3d 486 [1st Dept 2016] [partial release only not applicable to additional work]; Kaminsky v Gamache, 298 AD2d 361 [release in resolution of dispute under prior lease not binding with respect to dispute over subsequent lease]; Zilinskas v Westinghouse Elec. Corp., 248 AD2d 777 [3d Dept 1998] [release limited to certain claims]; Herman v Melamed, 110 AD2d 575 [1st Dept 1985] [release limited to one matter]).

The situation herein is similar to that in Rotondi v Drewes (31 AD3d 734), wherein a release disposing of a rent dispute between a landlord and a tenant was held not to apply to the tenant's action for personal injuries allegedly sustained when his leg fell through a rotted step outside the house he was renting from the defendant. The Appellate Division wrote:

Here, the release is limited by its recitals to the prior landlord-tenant dispute, and the [*5]circumstances surrounding its execution support the plaintiff's contention that it was not intended to release the defendant from liability in this personal injury action. To the extent that the language of the release could be viewed as ambiguous, the plaintiff submitted extrinsic evidence in admissible form showing that the release was not intended to apply to his personal injury claims. Once the plaintiff submitted evidence attacking the factual basis of the release defense, "the burden [fell] upon the defendant to come forth with sufficient evidence to raise an issue of fact with respect to the defense" (Becker v Elm A.C. Corp., 143 AD2d 965, 965-966 [1988]). The defendant could not meet his burden merely by arguing that the language of the release was ambiguous, but was required to submit extrinsic evidence to present a disputed issue of fact as to the parties' intent (see Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285, 291 [1973]). Since the record evidence clearly shows that the parties did not intend the release to relieve the defendant of liability in the instant personal injury action, the motion for summary judgment dismissing the defense of release should have been granted (see Hughes v Long Island Univ., supra; Lefrak SBN Assoc. v Kennedy Galleries, supra). (31 AD3d at 736.)
Likewise in the action at bar, Defendant's first affirmative defense alleging release of liability must be dismissed.
The Court rejects other arguments posed by the parties either on the merits, at the discretion of the Court, or as academic. This includes Defendant's arguments concerning Plaintiff's noncompliance with IAS Part 2 Rules, the lateness of Plaintiff's papers, and an issue regarding translation. This includes also Plaintiff's arguments concerning the admissibility of the releases as evidence and the form of Defendant's attorney's affirmation.

Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's' motion for summary judgment dismissing the complaint is DENIED and, upon searching the record, the Court awards summary judgment to Plaintiff on the issue of the subject releases and dismisses Defendant's first affirmative defense asserted in its answer.

Footnotes

Footnote 1:Transcripts may be procured from the court reporter (see Matter of Lewandowski v Office of Ct. Admin., 173 Misc 2d 335 [Sup Ct, Albany County 1997]).

Footnote 2:"Plaintiff's claims against Defendant are barred because Plaintiff released Defendant from liability for the claims asserted in this action" (NYSCEF Doc No. 140 ¶ 15).